(43 App. Div. 573.)

MYERS v. SEA BEACH RY. CO. et al.

(Supreme Court, Appellate Division, Second Department.   October 10, 1899.)

1. EVIDENCE—PAROL EVIDENCE TO EXPLAIN LEASE.
   A description in a lease, made by reference to the description in a later
   lease, describing the premises as "the barroom in the north end of the
   - Sea Beach Palace," is ambiguous, and parol testimony is admissible to
   explain the terms of the lease.

2. LANDLORD AND TENANT—EVICTION—DAMAGES.
   Where the lessor evicted the lessee and destroyed buildings which they
   had jointly constructed, the latter cannot recover as damages the extra
   value of the structures which were destroyed.

3. SAME—EVIDENCE.
   Where a lessee's damages for eviction from a portion of the premises
   include prospective profits, the exact amount of which cannot be ascer-
   tained, plaintiff's testimony from memory as to what his profits were
   before, and what they have been since the injury complained of, is ad-
   missible.

4. SAME—EXCESSIVE VERDICT.
   The plaintiff was evicted from his premises, and the buildings, which
   had been jointly constructed by himself and lessor, and were valued at
   $1,000, were destroyed, and he also suffered in the profits from his business
   extending over two seasons, and which, according to his own testimony
   from memory, amounted to about $1,000 for one season. Held, that a
   verdict for $2,500, trebled by statute, was excessive.

Appeal from trial term, Kings county.

Action by John C. Myers against the Sea Beach Railway Com-
pany and the Sea Beach Land Company for damages by eviction.
From a judgment for plaintiff and an order denying a new trial,
defendants appeal.   Judgment affirmed, on condition that plaintiff
submit to a reduction.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT,
HATCH, and WOODWARD, JJ.

John L. Wells, for appellants.
James C. Church, for respondent.

GOODRICH, P. J.   The plaintiff sues to recover damages occa-
sioned by his eviction from premises at West Brighton, Coney Island,
of which he claims to have been tenant under a lease from the New
York & Sea Beach Railway Company, dated July 8, 1895, for a term
ending October, 1899, at the annual rental of $1,000.   The lease de-
scribes the premises as "the premises at northerly end of the Sea
Beach Palace, which were formerly leased to party of second part
by lease No. 332."   Lease 332 was dated January 22, 1892, and de-
scribed the premises as "the room at north end of waiting room
in the Sea Beach Palace, which was rented by party of second part,
during season of 1891, for a barroom."   The rental was $1,000.
In 1891 the plaintiff had a lease from the company of premises
therein described as "the barroom in the north end of Sea Beach
Palace."   The rental was $600.   The defendants offered in evidence
the three several applications on which the leases were granted.
The application for the lease of 1895 describes the premises as "bar-
room in Sea Beach Palace waiting room."   The one for the lease of

1892 described them as "Sea Beach Palace bar, being same premises as occupied by me in season 1891." The one for the original lease of 1891 read, "Sea Beach Palace waiting-room bar." In March, 1898, the new structures which the plaintiff had erected, including the ice box, were torn down by the defendants, and the plaintiff was evicted therefrom, although he was left in possession of the barroom which he originally occupied. He sued to recover as damages the value of the destroyed property and the profits which he would have made during the remainder of the term of his lease. The controversy on this appeal arises out of the construction to be placed on the description of the premises in the lease of 1895. The defendants contend that the lease covered only the barroom which the plaintiff leased and occupied in 1891. The plaintiff contends that certain transactions, other than and outside of the written leases, must be considered, and offered parol evidence to show what premises were intended to be the subject of the lease of 1895. The evidence was admitted on the ground that there was an ambiguity in the description. There was evidence tending to show that, under the lease of 1891, the plaintiff occupied a barroom at the north end of the building known as the "Sea Beach Palace," and outside and in the rear of this barroom an ice box, about eight feet long, over which was a storm house, the entrance to which was on the outside of the barroom. It will be observed that this lease refers only to a barroom. Before the lease of 1892 was made, the plaintiff applied to Mr. Nelson, the manager of the company, for more room than he had been occupying. Mr. Nelson called Mr. Lark, an employé of the company, who staked out a plot of adjacent ground for the use of the plaintiff, upon which the latter erected certain structures, viz. a house 45 by 50 feet in size, a toilet, a dining room, and a kitchen in the rear. There was also a garden surrounded by a picket fence, and a platform. These structures were erected and occupied by the plaintiff with the consent of the company. After the land had been staked out, but before the structures were erected, the lease of 1892 was executed for an increased rental. The kitchen was equipped with a range and other cooking utensils. Some of the materials for the buildings were supplied to the plaintiff by Mr. Nelson from a lot of old materials owned by the company. Other parts were purchased by the plaintiff, who paid for the erections, the value of which he testified was "about a thousand dollars." The plaintiff also made pipe connections between the barroom and the ice box for drawing beer. He occupied the premises as thus constructed, and was in possession when the lease of 1895 was executed. The defendants objected to this evidence on the ground that it varied the terms of the lease, but we think the objection untenable. There was no such definite description of the premises in the lease as would enable a court or jury to say exactly what premises were included in the lease of 1892 or 1895, and the court properly admitted the evidence to explain, but not to vary, the terms of the lease. This view is not shaken by the fact that the lease describes the premises as those which were formerly demised by the lease No. 322, executed in 1892, which generally de-

scribed the premises as the barroom in the north end of the Sea Beach Palace. It is apparent, from the transactions between the plaintiff and Mr. Nelson and Mr. Lark, that the premises for which the lease of 1892 was given included the additional ground staked out by them, and upon which, with their knowledge and consent, the plaintiff erected and occupied the new structures; and we might well hold, if it were necessary, that the erection and occupancy under this permission constituted an estoppel against the company.

In Pettit v. Shepard, 32 N. Y. 97, it was held that, where the description of land conveyed by deed is vague and uncertain, parol evidence of the intention of the parties as to the real boundaries is admissible, not to contradict or vary the deed, but to identify the subject-matter. The deed in that case read, "the west part of lot No. 76, lying on the easterly side of the Niagara river, containing eighty-five acres, be the same more or less." The court held that the description was vague and uncertain, and admitted parol evidence to show what part of lot 76 was intended. Sanders v. Cooper, 115 N. Y. 279, 22 N. E. 212, was an action on a policy of fire insurance. There was a question of the identity of the premises named in the policy which accurately described one building which was not burned, while the plaintiff claimed that it was intended to cover another building which was burned. The court said (page 285, 115 N. Y., and page 213, 22 N. E.):

"The subject of the insurance is to be ascertained from the description in the policy and such extrinsic evidence as may be necessary to identify the property described."

In Hathaway v. Power, 6 Hill, 453, Beardsley, J., cites the following with approval (page 456):

" 'All ambiguity of words within the deed,' as Lord Bacon expresses it, 'may be helped by construction' (1 Phil. Ev. 538); and courts will labor diligently to make deeds effectual between parties, rather than reject them as unintelligible and nugatory. 'I do exceedingly commend the judges,' says Lord Hobart (Earl of Clanrickard's Case, Hob. 277), 'that are curious and almost subtile astuti to invent reasons and means to make acts according to the just intent of the parties, and to avoid wrong and injury which by rigid rules might be wrought out of the act,'—a sentiment which has received the approval of the wisest sages of the law. 1 Vent. 141; 2 Wils. 78."

A similar question arose in Sargent v. Adams, 3 Gray, 72, where the lease described the premises as "the Adams House"; and the court admitted evidence to describe the subject-matter of the lease, because the description was so meager, even though the lease was not ambiguous on its face. The question was whether the term "the Adams House" included only such part of the building as was fitted up as a hotel, and not the stores on the first floor.

We are clearly of opinion that the trial court properly admitted evidence showing what premises were actually occupied by the plaintiff when the lease of 1895 was executed. The jury rendered a verdict for $2,500. A judgment for treble that amount was entered, in pursuance of section 1669 of the Code of Civil Procedure; and from that judgment this appeal is taken. We are not satisfied, however, that the verdict is not excessive. Most of the materials with which the new structures were erected were supplied by the

company, which gave the use of such materials to the plaintiff. He furnished sashes and paid the cost of labor in the erection, and, when asked as to the value of all the structures erected by him, answered, "Oh, I guess about a thousand dollars," and there is no other evidence as to the value of the plaintiff's interest therein. This estimate evidently included the value of the entire buildings as erected, and a recovery on that basis was manifestly improper. The court charged that the plaintiff's damages included "the value of the structures which were destroyed, which were his property at that time." To this the defendants excepted. As to the injury to the plaintiff's business by the loss of profits, the testimony is somewhat meager, and necessarily so, as it is based on the interruption of such business; but the authorities recognize the doctrine that, where a person has violated a contract, he should not be permitted to escape liability because the amount of the damage which he has caused is uncertain, and that prospective profits, so far as they can properly be proved, and which would certainly have been realized, but for the defendants' default, are allowable as damages, though the amount is uncertain, and that the rule that damages which are contingent and uncertain cannot be recovered embraces only such as are not the certain result of the breach, not such as are the certain result but uncertain in amount. Wakeman v. Manufacturing Co., 101 N. Y. 205, 4 N. E. 264.

In the present case, the damage to the plaintiff's business, resultant from his eviction, was certain, but the amount was uncertain. When asked what his profits were during the season of 1897, he answered, "Well, I guess the profits were from $2,500 to $3,000," and accounted for his uncertainty by the fact that his books of account had been stolen. He said that his profits during the season of 1898 were "about a thousand dollars less." The estimate of the profits of 1897 included the use of the entire premises, while the estimate as to 1898 included only the business of the barroom. It may be that there was no other way in which the damage to profits could have been proved, but such proof is distressingly meager. This loss of profits, whatever it was, extended over the seasons of 1898 and 1899. While the evidence is meager and unsatisfactory in an exact point of view, yet, in the light of authority, it was admissible so far as it went.

But we think justice will be subserved by a reduction of the verdict, instead of a reversal of the judgment. If the plaintiff consents to a reduction of the verdict to $2,500, the judgment will be affirmed.

CULLEN, J. I concur with Judge GOODRICH that the jury was authorized to find that the lease included the premises in dispute. But it is very doubtful whether that question was necessarily involved in this litigation, provided the jury found that the plaintiff was in possession of the premises and was ejected in a forcible manner. It seems that in an action under section 1669 of the Code the plaintiff may rely on his possession only, and not upon his title. See opinion of court of appeals in Compton v. The Chelsea, 139 N.

Y. 538, 34 N. E. 1090; O'Donnell v. McIntyre, 2 N. Y. St. Rep. 689. For analogous principle in forcible entry and detainer, see People v. Nelson, 13 Johns. 340, and People v. Godfrey, 1 Hall, 269. In the latter case it is said:

"The question of title, as between the relator and the defendant, cannot be tried in this manner [forcible entry and detainer proceeding]; but the latter, if his claim is paramount to that of the relator, must resort to an appropriate remedy to maintain his rights."

This question was not raised on the trial, but it has material bearing on the question of damages. The alleged forcible entry was in March, 1898, and the action was brought on April 27th of the same year. The plaintiff claimed under a lease which expired on the 1st day of October, 1899. He was allowed to recover for the loss and injury to his business during the whole remainder of the demised term. The rule is that in an action at law damages only to the time of the commencement of the action can be recovered. Uline v. Railroad Co., 101 N. Y. 98, 4 N. E. 536. If it be true that in an action under section 1669 of the Code the plaintiff cannot defend a violent and forcible ouster by showing paramount title, in such an action the rule referred to should be strictly enforced, because otherwise the plaintiff might recover the value of an estate to which he had no title. This point was not raised on the trial, but the damages awarded are large, and, as trebled by the statute, the punishment meted out to the defendants is unreasonably severe. An appeal having been taken from the order denying the defendants' motion for a new trial, we have the power to grant relief, although no exception has been taken. But, as already said, I concur in the view that the jury was authorized to find that the lease included the premises in dispute. The eviction of the plaintiff constituted a breach of the lessor's covenant for quiet enjoyment. Treating the action as for such breach, the plaintiff was entitled to recover for the value of the whole demised term (Mack v. Patchin, 29 How. Prac. 20; Id., 42 N. Y. 167), even though the action was brought directly after the eviction. Of course, in such an action damages are single.

If the plaintiff within 20 days stipulates to reduce his recovery of damages to the amount found by the jury, then the judgment as reduced should be affirmed, with costs to the respondent. If the plaintiff fails so to stipulate, then the order denying defendants' motion for a new trial should be reversed and a new trial granted, costs to abide the event, upon payment by the defendants within 20 days of the costs and disbursements of the trial, including the extra allowance. If neither party complies with these conditions, then the judgment and order should be affirmed, with costs.

BARTLETT, HATCH, and WOODWARD, JJ., concur.