EDWARD P. MULLEN, Appellant, v. JOHN WASHBURN, Respondent.

**Trespass — evidence — when oral testimony admissible to show true location of boundary line between two pieces of real property.**

1. It is a well-established rule of law that parol evidence is admissible to apply a writing to its subject, and that where words of general description are used in a deed, oral evidence may be resorted to to locate the premises intended to be conveyed. Where the description of property is vague, uncertain and general, oral evidence is required to make it specific, and such evidence is not in contradiction of the contract but admissible to aid a jury in determining the application of the language of the contract to the particular land to which it refers.

2. In this action, testimony was given to the effect that after a contract between plaintiff and defendant had been entered into by which defendant agreed to warrant and defend the title to wood and timber to be cut on certain premises of defendant by plaintiff, under which agreement the boundary line could not be located by the description contained therein without the aid of a surveyor or of oral evidence, defendant said in substance that he would show plaintiff where the lines were, would point them out to him. The jury could have found and presumably did find that the defendant obtained a surveyor and after surveying the line in question, pointed it out to the plaintiff as so surveyed and located. The plaintiff cut the wood, timber and trees up to the line so pointed out and surveyed, but not beyond it. An action was commenced against him by the owners of the adjoining lands for trespass and it resulted in a judgment for the value of a few trees that he had cut and removed along but within the line as so located. This action is brought to recover from the defendant under the agreement with him the amount paid and expended by plaintiff in the trespass action. *Held*, that the evidence was properly admitted.

*Mullen* v. *Washburn*, 169 App. Div. 704, reversed.

(Argued October 16, 1918; decided November 12, 1918.)

APPEAL from a judgment, entered November 23, 1915, upon an order of the Appellate Division of the Supreme Court in the third judicial department, reversing a judg-

ment in favor of plaintiff entered upon a verdict and directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Erskine C. Rogers* for appellant. The evidence as to the statements and acts of the respondent before and after the execution of the agreement was clearly admissible to show the intention of the parties as to the east boundary line of the wood lot. (*Pettit* v. *Shepard,* 32 N. Y. 97; *Petrie* v. *Hamilton College,* 158 N. Y. 458; *Partridge* v. *Russell,* 2 N. Y. Supp. 529; *Myers* v. *S. B. Ry. Co.,* 43 App. Div. 573; *Crook* v. *Wilson,* 40 Hun, 269; *Orvis* v. *E., C. & N. R. Co.,* 17 App. Div. 187; 172 N. Y. 656; *People ex rel. Murphy* v. *Gedney,* 10 Hun, 151.)

*T. D. Trumbull* for respondent. The agreement between the parties as to the transaction was reduced to writing and signed by the parties, and such agreement must be the sole arbiter of the rights and liabilities of the parties so far as the subject-matter of the contract is concerned. The trial court, therefore, erred in allowing oral evidence of what was said before, at the time and after the written contract was executed and delivered. (*Middleworth* v. *Ordway,* 191 N. Y. 415; *Mahaney* v. *Carr,* 175 N. Y. 461; *Eighmie* v. *Taylor,* 98 N. Y. 288; *Chapin* v. *Dobson,* 78 N. Y. 74; *Wilson* v. *Dean,* 74 N. Y. 531; *Englehorn* v. *Reitlinger,* 122 N. Y. 81; *Read* v. *Bank of Attica,* 124 N. Y. 671; *Gordon* v. *Neiman,* 118 N. Y. 152; *Emmett* v. *Penoyer,* 151 N. Y. 567; *House* v. *Walsh,* 144 N. Y. 421; *Marsh* v. *McNair,* 99 N. Y. 174; *Smith* v. *Dotterworth,* 200 N. Y. 306; *Delehanty* v. *Dunn,* 151 App. Div. 695.)

CHASE, J. The defendant entered into a written contract with the plaintiff by which he granted, sold and

conveyed to him "All the wood, timber and trees now growing, standing and being upon the following described piece or parcel of land   *   *   *   bounded and described as follows to wit: On the north by lands formerly owned by Fayette Selleck; on the east by lands now or formerly owned by Nicholas Palmer and Elizabeth J. Palmer; on the south by lands of Marvin Kingsley; on the west by lands owned or occupied in 1890 by John Palmer being twenty acres of land more or less off from the south end of the farm heretofore known as the ' Ira Palmer Farm.' "

The contract included covenants as follows: " The said party of the first part hereby covenants and agrees to warrant and defend the title to the wood, timber and trees hereby sold, transferred and conveyed against any person or persons whomsoever, and to defend any action for trespass or damages by reason of the cutting such wood, timber or trees by party of the second part and to save said party of the second part harmless from any action for trespass brought against him by any person or persons for cutting and removing such timber, wood and trees.   But it is expressly understood that party of the first part shall not be liable to party of the second part for any damage by reason of any order or injunction restraining the cutting or removing of such wood, timber and trees pending any action that may be brought for trespass, damages, or in any manner relating to the title of said premises.   This sale and conveyance is made upon the further condition that the said party of the first part shall not be liable for any trespass or damage done or committed on any lands or property adjoining the above described premises."

Prior to the execution of the contract there had for several years been litigation between the defendant and the owners of the adjoining wood lot on the east, in which the adjoining owners claimed title to all of the defendant's

lot. The fact of such litigation was well known to the plaintiff. During the negotiations leading up to the contract the parties thereto walked over the wood lot and the plaintiff testified that defendant " Pointed out the west line, or showed me where it was, that it had been surveyed, and he said he did not. know where the east and north lines were."

On the day that the writing was prepared and signed there was a conversation in regard to the location of the east line. Counsel for the plaintiff testified that the defendant said " That he would show Mr. Mullen where the lines were, would point them out to him. That was satisfactory to Mr. Mullen and I told him that if that was understood between them, and was at the time the contract was delivered, that would make it safe for. Mr. Mullen * * * and Mr. Washburn stated that he would at any time point out the line to Mr. Mullen."

The contract was then executed and delivered. The plaintiff commenced cutting the wood, timber and trees on the wood lot and the owners of the adjoining lands on the east commenced an action against the plaintiff and defendant herein seeking to enjoin any further cutting of wood, timber and trees. The defendant assumed the defense of that action and his attorney appeared therein for both of the defendants. The jury could have found and presumably did find that the plaintiff proceeded further with cutting the wood, timber and trees and that he then called upon the defendant to have the east line located and surveyed and that the defendant obtained a surveyor and after surveying the east line pointed it out to the plaintiff as so surveyed and located. The plaintiff cut the wood, timber and trees to the line so pointed out and surveyed, but not beyond it. An action. was commenced against him by the owners of the adjoining lands for trespass and it

resulted in a judgment for the value of a few trees that he had cut and removed along but within the line as so located. This action is brought to recover from the defendant the amount paid and expended in the trespass action.

The defense of the trespass action was conducted by the attorney for the defendant and the jury could have found that the papers therein were taken to him by the plaintiff by the defendant's direction. The jury in this action found in favor of the plaintiff.

On the appeal by the defendant from the judgment entered upon such verdict, the Appellate Division reversed the judgment holding that the evidence as to the agreement between the parties that the defendant would point out the line intended by the general description as stated and also that the east line was run and pointed out to the plaintiff by a surveyor pursuant to such agreement with the defendant, were improperly received in evidence as in contradiction of a written instrument.

On the trial it was shown that there was no fence, barrier or visible evidence of the east line of the wood lot. All of the lands at or near the east line were covered with trees. The line was not marked on the trees or otherwise and manifestly could not be located by the description contained in the contract without the aid of a surveyor and of oral evidence.

The purpose and intention of the parties among other things appears to have been to require the defendant who had had litigation in regard to the title of his lot, to assume the expense of any further litigation that might result from cutting the wood, timber and trees and removing the same from the lot as claimed by him, but that if the plaintiff should carelessly or intentionally trespass upon lands adjoining the wood lot and on lands

27

not claimed by the defendant that he (the plaintiff) alone should be liable for such trespass. The jury could have found that the plaintiff did not carelessly or intentionally trespass upon the adjoining lands, but that he cut the wood, timber and trees upon the lands as described in the contract and defined and amplified by the defendant through his surveyor. We think the Appellate Division was wrong in reversing the judgment and that the Trial Term was right in admitting the evidence.

The east line of the lands conveyed is stated to be the lands " Now or formerly owned by Nicholas Palmer and Elizabeth J. Palmer." The contract, therefore, makes the east boundary of the lands described dependent upon locating the line of the lands now or formerly of the Palmers.

As we have said, it appears that there are no monuments or other outward evidences of its location. That fact was well known to the parties at the time the instrument was signed and they then knew that oral evidence would be required to make certain the uncertainty that was apparent from a mere inspection of the contract. As the description of the property is vague, uncertain and general, oral evidence is required to make it specific, and such evidence is not in contradiction of the contract but admissible to aid the jury in determining the application of the language of the contract to the particular land to which it referred.

It is a rule that where words of general description are used in a deed, oral evidence may be resorted to, to locate the premises intended to be conveyed. (*Orvis* v. *Elmira, Cortland & N. R. R. Co.*, 17 App. Div. 187, 190; affirmed, 172 N. Y. 656; *Coleman* v. *Manhattan Beach Improvement Co.*, 94 N. Y. 229; *People ex rel. Myers* v. *Storms*, 97 N. Y. 364; *Pettit* v. *Shepard*, ·32 N. Y. 97.)

The *Pettit* case was an action of ejectment brought to

recover thirty-five acres of land. It appeared that the plaintiffs were the heirs at law of one who had in 1815 purchased a lot known as No. 76 described as containing 175 acres more or less. The lot in fact contained over 200 acres. Plaintiff's ancestor in 1825 sold ninety acres of the lot to one Anguish " To be taken from the east side bounded on the east, north and south by the lines of the lot and on the west by a line parallel to said east line and so far distant as to include ninety acres." Subsequently the ancestor sold to one Grimard " The west part of lot 76 lying on the easterly side of Niagara river containing eighty-five acres be the same more or less. Grimard went into possession of all the land up to the Anguish line and subsequently conveyed by the same description to the defendant." The plaintiffs claimed that the deed to Grimard conveyed but eighty-five acres and sought to recover that part of what remained of lot 76 after the conveyance of the ninety acres and after deducting therefrom eighty-five acres off the west end thereof. On the trial Grimard gave testimony to the effect that when he purchased of plaintiff's ancestor he went with him on the premises and pointed out the boundaries and explained to him that this west part of the lot extended up to the Anguish line. The testimony was received under plaintiff's objection and exception. The jury found for the defendant. The court say: " The testimony of Grimard, however, became material and important as to the intention of the grantor and the identity of the premises. The evidence was not given to vary or contradict the deed, but to identify the subject matter, and to show what the grantor intended by ' the west half of lot No. 76.' In this view, the evidence was rightly admitted. It tended to show the location and boundaries of the piece of land which the grantor intended to convey and did convey by the description or rather the designation, ' the west half of Lot No. 76.' " (p. 104.)

In *Hooten* v. *Comerford* (152 Mass. 591) the matter in dispute was the east boundary line of the defendant's land. In the conveyance to her the west line was described as " lands of the grantor." The deed referred to no monuments by which the starting point could be ascertained. The court held: " Under such circumstances, if bounds or monuments existed at the date of the deed which were agreed upon orally by the parties as showing the lines of the land conveyed, or were erected or fixed by the parties for that purpose soon afterwards, that is sufficient to fix the true boundaries and lines of the land conveyed. Oral evidence must necessarily be resorted to, or the deed will fail." In that case the court allowed testimony to show that at the time of the delivery of the deed the grantor pointed out to the grantee four stakes, one on each corner, and told her that the land between said stakes was the land that he conveyed to her.

It is a well-established rule of law that parol evidence is admissible to apply a writing to its subject. (Ruling Case Law, vol. 4, § 65, p. 125. See, also, *Myers* v. *Sea Beach Railway Co.*, 43 App. Div. 573; *Petrie* v. *Trustees of Hamilton College*, 158 N. Y. 458; *Cronk* v. *Wilson*, 40 Hun, 269; *People ex rel. Murphy* v. *Gedney*, 10 Hun, 151.)

In *Partridge* v. *Russell* (18 N. Y. S. R. 685, 687) the boundaries as stated in a deed of the real property in dispute consisted in part of a reference to the line of lands of adjoining owners and evidence was received of the location of such line by the parties to the deed in the company of a surveyor and the statements of the grantor prior to the execution of the deed. It was held that " If a grant by sufficient description of the premises clearly ascertains the location of the premises conveyed, it is for the court to see that the grant is applied to the subject matter in accordance with the express intention of the

parties.  In such a case nothing but a question of law is presented for the court to determine, but whenever the location of the premises is doubtful, through uncertain, inconsistent or conflicting terms of description in the deed, the proper location of the premises becomes a question of fact to be determined by the jury on all the evidence."

Parol evidence is received where doubt arises upon the face of the instrument as to its meaning, not to enable the court to hear what the parties said, but to enable it to understand what they wrote as they understood it at the time.  Such evidence is explanatory and must be consistent with the terms of the contract.  (*Trustees of Southampton* v. *Jessup,* 173 N. Y. 84, 89.)

The judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in this court and in the Appellate Division.

HISCOCK, Ch. J., HOGAN, CARDOZO, POUND and McLAUGHLIN, JJ., concur; ANDREWS, J., absent.

Judgment reversed, etc.