FEDERAL WASTE PAPER CORP. et al., Plaintiffs, *v.* GARMENT CENTER CAPITOL, INC., et al., Defendants.

Supreme Court, Special Term, New York County, August 10, 1945.

*Harold H. Straus* for plaintiffs.

*Glass & Lynch* for Garment Center Capitol, Inc., defendant.

*Francis M. Verrilli* for Frank Granieri, defendant.

HECHT, J. Plaintiffs, at the inception of this action, moved for an injunction *pendente lite*. The application was denied at Special Term (181 Misc. 701), the court, in effect, holding that the complaint was legally insufficient. On appeal the Appellate Division, First Department, affirmed the order without opinion (267 App. Div. 973). Thereafter, defendants moved for judgment on the pleadings. These motions were granted at Special Term (N. Y. L. J., June 13, 1944, p. 2273, col. 6). On appeal to the Appellate Division the orders and judgments entered thereon were reversed (268 App. Div. 230), Mr. Justice DORE writing the opinion of the court. The court stated the following with reference to its affirmance of the order denying the injunction (p. 235): " Our prior affirmance without opinion (267 App. Div. 973, affg. 181 Misc. 701) of the order of Special Term denying a preliminary injunction did not necessarily adopt the reasons set forth in the opinion of the learned Special Term; the denial of a temporary injunction does not constitute an adjudication on the merits; the prior order is not the law of the case. (*Walker Memorial Baptist Church* v. *Saunders,* 285 N. Y. 462, 474.) " Leave was thereafter granted to defendants to appeal to the Court of Appeals (268 App. Div. 966, 978) upon the following certified question of law in respect to each defendant: " Does the complaint herein set forth facts sufficient to constitute a cause of action? " The Court of Appeals on April 5, 1945 (294 N. Y. 714), affirmed the order of the Appellate Division without opinion and answered the certified question in the affirmative.

It is true, as urged by defendants, that the affirmance by the Court of Appeals did not necessarily approve the reasoning of Mr. Justice DORE (*Adrico Realty Corp.* v. *City of New York,* 250 N. Y. 29). This opinion, however, set the pattern for the trial and the evidence presented thereon has been considered in conformity with that opinion.

It was established at the trial that plaintiffs had been engaged in the business of removing waste paper and rags from loft buildings, baling and selling such material. Plaintiffs are interrelated companies with Julius Villano, president of plaintiff, Federal Waste Paper Corp., the dominating figure in both. Prior to June 15, 1937, Julius Villano was the owner of the business of plaintiff, International Waste Paper Company. In 1939 he transferred the business of International to Federal. In September, 1943, the haulage and packing part of the business was assigned to plaintiff, Patsy Villano (a brother of Julius), doing business as International Waste Paper Company,

and the portion of the business which consisted of selling the waste paper and rags was retained by Federal. International ceased doing business in November, 1944, and the function it performed up to this date was assumed by Federal.

Defendant Garment Center Capitol, Inc., owns and operates a building at 512 Seventh Avenue, Borough of Manhattan, City of New York. The building is a forty-four story loft building and has approximately eighty tenants, who are principally engaged in manufacturing garments. A considerable quantity of waste accumulates daily as an incident to manufacture. Sometime in June, 1937, Julius Villano had a conversation with Bernard Levine, assistant secretary of Garment Center, with respect to the removal of waste from 512 Seventh Avenue. Villano was given permission to solicit tenants of the building for the privilege of removing their waste material. He commenced to remove the waste for a number of tenants on June 15, 1937, and continued to do so until February 25, 1944, at which time he serviced forty-four of the tenants in the building. During this time a profitable business had been built up by plaintiffs.

On February 24th, 25th and 26th, plaintiffs were requested by a number of their customers in 512 Seventh Avenue to discontinue servicing them. This was a direct result of communications had by representatives of Garment Center with the tenants informing them that it (Garment Center) had decided to limit the waste removal business to one man, defendant Frank Granieri. Julius Villano called upon the tenants who were his customers on February 25th and 26th, and succeeded in retaining the business of a large majority. He instructed plaintiffs' employees to service the building on March 1st in the same manner as they had in the past.

From 1939 to March 1, 1944, the procedure followed by plaintiff was substantially as follows: The waste material was gathered into large burlap bags which were placed near the freight elevators, on the floors occupied by the tenants, during the afternoon. The following morning, shortly after 6:00 A.M., the waste removers returned to collect the bags which were picked up, loaded on the freight elevator, taken to the main floor where they were placed in trucks to be carted away. This method of removal was adopted in order that the waste removers would not interfere with the use of the freight elevators after 7:30 A.M., when employees of the tenants entered the building in large numbers and the freight elevators were in demand for the handling of tenants' merchandise. When plain-

tiffs' employees arrived at the building, at approximately 6:10 A.M., on March 1, 1944, they were told by the elevator operator on duty that he had been instructed by the owner of the building not to permit them to use the freight elevators. They were likewise refused the use of the elevators on March 2, 1944. On this latter date this action was instituted and defendants were served with an order to show cause why an injunction *pendente lite* should not issue restraining defendants from interfering with the business of plaintiffs. When plaintiffs' employees appeared at the building on March 3d they were told that they could use the elevators at nine o'clock. Thereafter, Garment Center adopted a course of conduct calculated to hinder and delay plaintiffs in collection of their customers' waste material. Garment Center employees were instructed to refuse plaintiffs' employees the use of the freight elevators if they arrived at the premises after 9:15 A.M., and they were further instructed to keep plaintiffs' employees in the building until 11:00 or 12:00 A.M. These instructions were carried out. After May 24, 1944, plaintiffs' employees were deliberately delayed by Garment Center employees, per instructions, until 2:00 P.M. This was accomplished by the method of having the freight elevator operators ignore signals for the use of the freight elevators given by plaintiffs' employees.

Defendant, Garment Center, maintained at the trial that it was under no legal compulsion to furnish plaintiffs' with free and continuing elevator service. Disposing of this contention when made on the appeal from the order denying defendants' motion for judgment on the pleadings, the Appellate Division held (268 App. Div. 230, 234, *supra*): " Defendant's contention is in effect that the owner of a loft building may exclude persons who are invitees of its tenants or under agreements with them in matters relating to their business use of the premises, without proof that such invitees have conducted themselves improperly or unlawfully or imposed any unreasonable burden on the owner. This amounts to a claim that the owner has the unrestricted right to select the tenants' visitors and tradespeople. If that follows from the mere fact of ownership, then it would seem the owner of an apartment house would have the right to select the laundress, grocer, butcher or milkman of his tenants and compel them to deal with such tradespeople of the owner's selection to the exclusion of those the tenant himself has invited. We think the mere statement of such claim based on ownership alone, without proof of any special restrictions, regulations or agreements, carries its own refutation."

The court further held (p. 234): " What the defendant owner in its leases may have specially reserved from tenants who are plaintiffs' customers, the extent to which plaintiffs are proper invitees or business visitors of the tenants in matters incidental to the tenants' business, the extent of the burden plaintiffs' service may impose on the owner or other tenants, the reasonableness of regulations, if any, that the owner may have made, all these and other relevant issues, can only be determined after full disclosure of the facts at trial."

The leases made with the tenants do not contain a reservation on the part of the owner of the right to regulate tradesmen dealing with the tenants from gaining access to the building. They contain the general reservation of the right, on the part of the owner, to make regulations as may be needful for the " safety, care or cleanliness of the building and for the preservation of good order therein ".

The leases do contain a clause requiring the tenant to remove all waste from the premises during each business day. Paragraph Twenty provides " The tenant agrees to provide proper receptacles as called for by the New York Fire Insurance Exchange for the rubbish and cuttings in the premises, and that it will keep the premises broom clean at the end of each and every business day during the term of this lease."

Moreover, the landlord, in these leases covenanted and agreed to furnish to the tenant, during the business hours of business days, proper and sufficient elevator service and on Sundays and holidays and nights to furnish at least one elevator, as follows: " The landlord covenants * * * Second: that during all usual business hours on business days the landlord will furnish proper and sufficient elevator service and on Sundays, holidays and nights, will furnish for the use of tenants such elevator service as the landlord shall deem necessary; it being understood, however, that on Sundays, holidays and nights the landlord will furnish at least one elevator * * *."

A landlord, in letting a building for business use, impliedly invites all persons to enter the building whose entry is " naturally incident " to the business of the tenants. This has been described as the rule of " implied invitation ", such invitation being distinguished from mere license, since the invitee comes upon the premises for some purpose connected with the business of the owner or the tenant.

It is clear that the tenants herein, being charged with the duty of keeping their premises " broom clean " daily, and with disposition of their waste paper and rags, necessarily must

invite persons to remove such waste paper and rags, making such persons invitees of these tenants within the meaning of the rule. This is a necessary incident to the business of the tenants and the invitee, therefore, has a legal right upon the premises and can enjoin the landlord from preventing his gaining access thereto and from preventing his using all means of ingress and egress including the freight elevators.

Defendant, Garment Center, failed to prove that the use of the elevators between 6:00 and 7:30 a.m. imposes any undue burden upon it. The proof established that the waste material was removed more expeditiously during these hours because employees of the tenants did not arrive at the building until after 7:30 a.m. and there was no freight to be carried. It is significant that defendant Granieri was permitted to continue to use the elevators between 6:00 and 7:30 a.m. after plaintiffs' employees were denied that privilege.

It was not proved at the trial that defendant Garment Center established any regulation which purported to give the sole right to remove waste material to defendant Granieri. The instructions given to restrict plaintiffs' employees to the use of the freight elevators after 9:00 a.m. and to so curtail the service to be given them so that they would be forced to remain in the building an unusual length of time, if they be considered a regulation, certainly cannot be upheld as a reasonable one. No proof was adduced to show that plaintiffs' employees, in the transaction of their business, conducted themselves improperly or unlawfully; in fact, several of the tenants testified as to the satisfactory manner in which they performed their work.

Plaintiffs have established that defendant Garment Center, improperly interfered with the conduct of their business with resultant loss to them. They did not, however, establish that such acts were performed as the result of a conspiracy between Garment Center and defendant Granieri. Accordingly, the complaint as to defendant Granieri is dismissed on the merits.

Proceeding to the consideration of the amount of damage to be awarded plaintiffs, we are confronted with the usual difficulty presented in a case of this kind. The fact, however, that it is difficult to compute with mathematical precision the damages caused plaintiffs by the acts of Garment Center, does not warrant the court refusing any damages whatever for the wrong. In *Wakeman* v. *Wheeler & Wilson M'f'g Co.* (101 N. Y. 205) the Court of Appeals held that where it is certain damages have been caused by a wrong and the only uncertainty is as to amount, there can rarely be good reason for refusing,

on account of such uncertainty, to make an award of damage. In *Myers* v. *Sea Beach Railway Co.* (43 App. Div. 573, 577) the court said: " * * * the rule that damages which are contingent and uncertain cannot be recovered, embraces only such as are not the certain result of the breach, not such as are the certain result but uncertain in amount." (See, also, *Steitz* v. *Gifford*, 280 N. Y. 15.)

Applying the foregoing rules to the facts herein I find that the evidence established that plaintiffs lost the following tenants as customers and that these tenants had paid the following fees to the plaintiffs for a number of years prior to March, 1944, when, due to the acts of defendant Garment Center, plaintiffs were deprived of their business with these tenants:

| Tenant | Fees |
|---|---|
| Bellsey Coat | $5.00 |
| Duplan Corp. | 4.00 |
| Empress Coat | 3.00 |
| Ben Gershel | 6.00 |
| Grossman & Feld Corp. | 5.00 |
| Jonas Coat Co | 6.00 |
| P & H Quinto Inc. | 8.00 |
| Stecker & Co | 2.00 |
| Joseph Vergara | 3.50 |
| Zuckerman & Kraus | 12.00 |
| I. Marks & Sons | 5.00 |
| Israelson & Levy | 2.00 |
| Sam Silverstein | 5.00 |
| Total Lost Fees per Month | $66.50 |

Upon the trial, plaintiffs waived any claims for lost fees for six months following March 1, 1944. Therefore, on the basis of the months starting with September 1, 1944, to June, 1945, consisting of ten months at $66.50 per month, plaintiffs lost a total amount of $665 in fees from these customers, less $4 representing two months' collections from Israelson & Levy who resumed doing business with plaintiffs in May, 1945, making a net loss in fees of $661 for that period.

It was established upon the trial, that for the period from March 4, 1944, to May 24, 1944, plaintiffs were compelled to remain in the building from 9:00 A.M. to 11:00 A.M. and from May 24, 1944, until the date of trial, June 11, 1945, plaintiffs were compelled to remain in the building from 9:00 A.M. until

2:00 P.M.; that plaintiffs' employee-collector, Ralph Cairelli, received a salary at the rate of seventy-two cents per hour. Assuming that it took this employee one hour to remove the waste material prior to March, 1944, I find that due to the acts of defendant Garment Center, this employee from March 4, 1944, to June 11, 1944, was compelled to work 1,026 additional hours at a cost to plaintiffs of $738.72.

Plaintiffs claim damage in the sum of $2,155.20 for alleged loss of profits due to loss of material. "There is probably no part of the law of damages more difficult of application than that to be applied in the ascertainment of the proper measure of damages for prospective profits prevented by wrongful interference. * * * Nevertheless, plaintiff seeking compensatory damages had the burden of proof and should have adopted and presented to the court a proper method and basis for ascertaining the damages it sought to recover." (*Alexander's Dept. Stores, Inc.,* v. *Ohrbach's, Inc.,* 269 App. Div. 321, 327, 329.)

There is no proof in the record showing such a loss or that Garment Center was the cause thereof. There is no proof that plaintiffs, but for the acts of Garment Center, would have made such a profit. Julius Villano, principal witness for plaintiffs, testified that he kept no record of the weight of collections made at the building prior to November 13, 1944. He admitted that he did not know the volume of his customers' business resulting in varying quantities of waste, and that his knowledge of their business in that respect was "speculative on his part." James Coyle, an employee of plaintiffs, testified that it was not the practice to weigh collections from the building prior to November, 1944. He admitted that paper is baled and sold by weight, but he could not give any record of weights for the period before November, 1944. He offered no explanation why records of weights were not made for the prior period, notwithstanding the presence of a scale at Federal's place of business.

Plaintiffs' claim for loss of material was not proved.

Plaintiffs claim the sums of $431.94 and $1,940.60 damages for "extra cost for truck". Plaintiffs' evidence on this aspect of the case had no probative value. Here they made a patent attempt to "build up" a claim for damage. They at first attempted to prove that the sum of $25 per day was paid to one Anthony Vignola for the use of his truck. Vignola, on direct examination, swore that he supplied this service to plaintiffs; that his truck was hired by Julius Villano and taken to

512 Seventh Avenue every day from March 4, 1944, for the purpose of removing waste paper and rags therefrom. He further swore that he made a charge of $10 per day from March 1, 1944, to May 23, 1944, and that he made a charge of $25 per day from May 24, 1944, to the date of trial. He was completely discredited on cross-examination and finally admitted that he did not hire out any truck to plaintiffs from April, 1944, to May 1, 1945, for use at the building.

There is no proof that either $431.94 or $1,940.60 was incurred as an " extra cost " or paid as such by plaintiffs to anyone. There is no proof that these sums could have been earned if the truck used by plaintiffs had been available for use elsewhere.

Plaintiffs claim damages in the sum of $396.27 allegedly paid for hire of a horse and wagon from November 24, 1944, to April 30, 1945. This horse and wagon was used in lieu of Federal's truck. It was not proved that, but for the acts of Garment Center, plaintiffs would not have been compelled to use a horse and wagon in order to remove waste from the building and to incur the cost thereof. Plaintiffs claim damages in the sum of $625 paid to Westside Trucking Co. for a truck and driver for the month of May, 1945. This trucking company is owned by Vignola who testified that he did not remember receiving said sum of $625 from plaintiffs. There is no proof that said sum was charged the plaintiffs or paid by plaintiffs to Vignola or anyone else.

Judgment for plaintiffs as against defendant Garment Center to the extent herein indicated. Motion to strike out testimony with respect to loss of profits is granted. All other motions to strike are denied. Appropriate exceptions to the several parties. Submit, within ten days, proposed findings of fact and conclusions of law on notice.