SMITH v. SMITH et al.

(Supreme Court, Appellate Division, First Department. December 7, 1906.)

1. ACCOUNT—INTERLOCUTORY JUDGMENT—NECESSITY.

In an action to recover a share of the profits of a firm by which plaintiff was employed, in accordance with the terms of the contract of employment, where a referee, in effect, took a full account of the matters in dispute as to the profits realized in a certain year, no interlocutory judgment in accounting was necessary.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Account, § 105.]

2. MASTER AND SERVANT—EMPLOYMENT—BREACH OF CONTRACT—DAMAGES.

Where plaintiff, under a contract of employment by a firm, was to receive a share of its profits, and the employment was to be terminated only on 10 months' notice, but it was terminated without such notice by the dissolution of the firm, in determining the amount of profits on which plaintiff's commission should be based for the period after the dissolution, it was proper to consider only the average for the last three years of business, and not to consider a previous year in which the profits had been unusually large.

3. SAME—VALUE OF BUSINESS.

Where plaintiff went into the employ of a firm, surrendering a commission business producing a net profit of $3,500 annually, on an agreement of the firm that it would furnish him as good a commission business on the termination of his employment, which it failed to do, an award of $3,500 for such failure was sufficiently favorable to plaintiff.

Appeal from Judgment on Report of Referee.

Action by Wilmot H. Smith against G. Waldo Smith and others. From the judgment, plaintiff appeals. Affirmed.

Argued before McLAUGHLIN, PATTERSON, INGRAHAM, HOUGHTON, and SCOTT, JJ.

F. K. Pendleton, for appellant.

Morris J. Hirsch, for respondents.

PATTERSON, J. The plaintiff appeals from a judgment entered in his favor upon the report of a referee. The cause of action arose out of the stipulations of an agreement entered into between the defendants, who were copartners, and himself, which is set out in full as an exhibit to the complaint. By the terms of that agreement it was provided that the plaintiff and one Howard L. Sills, in consideration of their relinquishing their commission business and tea and coffee business, and devoting their time to the interests of the business of the defendants, should become partners in the profits of the defendants' business in the manner following: The plaintiff and Howard L. Sills were each to receive a monthly payment of $250, commencing July, 1897, and in addition each to receive one-sixth of each year's net profits, as shown by the balance sheets at the end of each fiscal year, such year to begin May 1st and end April 30th. Details of the method of ascertaining the profits are then provided for, and the agreement proceeds to recite a follows:

"While it is the purpose of the parties of the first part [that is, the defendants] that this agreement shall continue during the life of all the parties yet they [the defendants] reserve the right to cancel it at any time upon ten months' notice having been given in writing, both of said parties [defendants] concurring or by the survivor of them."

The defendants also agreed that if at any time the plaintiff or Howard L. Sills, or either of them, desired to cancel the arrangement, or if the defendants should cancel it, after due notice, that they (the defendants) would give to the plaintiff and Howard L. Sills, or either of them, commission trade as good in all respects as the commission trade they surrendered. Upon entering the service of the defendants Wilmot H. Smith and Howard L. Sills did surrender a commission business. Relations between all the parties to the agreement existed and were continued until the 28th of February, 1902. On the 13th day of February, 1902, defendants gave notice to the plaintiff that the agreement would expire 10 months from that date, namely, on the 13th day of November, 1902. That notice was given because of the dissolution of the defendants' firm. The plaintiff was not continued in the employment of the new firm; his services not being required. The plaintiff had received $250 a month and one-sixth of the profits. He received no profits from February 28, 1902, to November 13, 1902. At the dissolution of the firm, an inventory was taken showing the profits of the business from the 1st of May, 1901, and notice was given to the plaintiff that such an inventory would be taken, but he paid no attention to it. Nothing by way of substitution for the commission business the plaintiff had surrendered when he entered the defendants' employ was furnished him. In this action the plaintiff prayed that the court would direct an accounting of the profits made by the defendants' firm from the 1st of May, 1901, to the 1st of March, 1902, so that one-sixth of the net profits made during that period might be determined and ascertained; second, that he might be awarded the damages suffered by loss to him of one-sixth of the net profits which the firm might have made during the period between the 1st day of March, 1902, and the 13th day of November, 1902; third, that the value of the commission trade surrendered by the plaintiff at the time he accepted employment with the defendants might be determined and ascertained, to the end that he might be allowed in the judgment to be entered in this action full indemnity for the damage which has been caused him by reason of the breach of the condition contained in the contract to restore him a commission trade as good as that which he surrendered. The learned referee in deciding the case allowed to the plaintiff the sum of $85, being one-sixth of the amount of an error in the inventory, $948.75 for a share of prospective profits from February 28, 1902, to the 13th of November, 1902, and $3,500, as damages for the failure of the defendants to give the plaintiff a commission trade in accordance with the stipulation of the agreement above recited.

In appealing from this judgment, the plaintiff asserts, in the first place, that he was entitled to a full accounting of the profits made by the defendants' firm from May, 1901, to March, 1902, but it is evident that the referee has, in effect, taken such an account. There was no occasion for an interlocutory judgment. By the order the referee was

required to hear and determine the action, and in ascertaining the profits made during the period mentioned he considered and passed upon various items aggregating some $39,000, which the plaintiff asserts were erroneously claimed by the defendants as credits in the statement of their business on the 28th of February, 1902. In his opinion the referee has very carefully and in detail stated his reasons for overruling the plaintiff's contention with reference to those items, and each of them, and nothing, therefore, need be said further concerning them.

The referee allowed the plaintiff as his share of profits that the defendants might or would have realized if they had continued in business up to the 13th of November, 1902, the sum of $948.75. The plaintiff insists that in making that allowance the referee proceeded upon an improper basis, which was that had the defendants continued in business until the expiration of the 10 months that business would have at least equaled in volume the business of the preceding two or three years and yielded an average percentage of profit. The amount fixed by the referee represented the plaintiff's proportion of that fair average. The plaintiff contends, further, that the referee should have gone back to preceding years in which by reason of adventitious circumstances the defendants did a very large business and reaped great profits. We see no ground for differing with the referee in his view of this subject, and, as he well says, there is no reason for passing over the three years immediately preceding 1902 to get back to a year of extraordinary business, such as 1898, in order to arrive at some conclusion of what business might or probably would have been done by the firm. As the referee very properly says, "To pass over these intervening years with their moderate returns, and adopt the extraordinary returns of 1898, as the basis for computing the plaintiff's damages," would not be warranted by the evidence in the case. Upon reading the record, we agree with the referee that it does not show any reason for believing that the profits of the business for 1902 would have exceeded by any substantial increase those of the two preceding years.

The appellant strenuously insists that the referee erred in not allowing him more than $3,500 damages for the breach of the stipulation of the agreement which provided that the defendants should furnish "a commission trade as good in all respects as the commission trade they have surrendered." Very divergent views have been presented as to the effect to be given to that stipulation, and as to what rule of damage, other than nominal damages, should apply in an action for a breach of it. We certainly know from the evidence what the plaintiff surrendered when he entered upon the performance of his part of the agreement with the defendants. At that time he had an interest of $3,500 net a year from a commission business which he had got together as a commission salesman for the defendants. He had 150 or more customers to whom he sold goods, on which he received a commission; those customers being brought to the defendants by him. He employed three men to assist him, and his business was so organized that it did not require much of his time or attention. After the making of the agreement with the defendants, he ceased to look after his particular customers, and devoted his time to the manufacturing department of the defendants and to looking after their business generally. The sales-

men employed by him became the employés of the defendants. The reasonable view of the undertaking of the defendants with relation to their stipulation now under consideration seems to be that they undertook, in case they terminated the plaintiff's relation with them under the agreement, to put him in possession of as good a commission trade as he had surrendered, namely, one from which he might, not necessarily would, realize the sum of $3,500 a year.  But there was no stipulation or undertaking that, upon doing so, they should guaranty or become responsible for the continuance of such a trade for an indefinite period of time or even for a year.  The commission trade was connected with the business of the defendants.  They did not agree to remain in business for any specific time.  They could not restore to him the customers he had secured for himself, and they could not compel any one to purchase from him.  The trade commission business surrendered by the plaintiff was one subject to termination by the defendants going out of business at any time.  All the defendants were bound to do was to furnish as good a trade commission business as that surrendered.  That to be furnished under the stipulation was to be no better than the one surrendered, and, as that might have been put an end to by the defendants retiring from business, so would the new arrangement be subject to the same contingency.  Clearly there was no obligation on the part of the defendants to give to the plaintiff a business that would continue for any fixed time.  The learned referee has allowed as damages for the breach of this stipulation the sum of $3,500, which, acting upon the rule that the measure of damage is the value of the contract, he has determined to be its value for one year.  We think this is a very liberal allowance, but it is unnecessary to comment further upon it, as the defendants have not appealed from the judgment.

It is also unnecessary to consider the contention of the plaintiff that he should have been allowed as damages a gross sum which as capital would produce an income of $3,500 a year to him for a period of his expectation of life, according to the Northampton Tables.  In no possible aspect of the case is such a theory admissible.

The judgment appealed from should be affirmed, with costs.  All concur.