WOLFE v. INTERNATIONAL FIRE INS. CO. OF FT. WORTH, TEX.

(Circuit Court of Appeals, Fourth Circuit. May 8, 1913.)

No. 1,148.

1. INSURANCE (§ 85*)—CONTRACT WITH GENERAL AGENT—CONSTRUCTION.

Where a contract by which plaintiff was employed by defendant, a fire insurance company, as its general agent in two states, to receive for his services a stated per cent. of the premiums on all policies written in such states, was silent as to classes of risks to be insured, the right was reserved to defendant to determine such classes from time to time as in the judgment of its officers and directors seemed for its best interests, and a direction to defendant to accept for the time only certain classes of risks was not a breach of the contract.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 115; Dec. Dig. § 85.*]

2. INSURANCE (§ 79*)—CONTRACT WITH AGENT—RESCISSION—CONSTRUCTION OF CORRESPONDENCE.

Where the attorneys for plaintiff, who was a general agent for defendant insurance company, because of certain action of defendant which they deemed a breach of plaintiff's contract of agency, with his assent or ratification wrote defendant that he rescinded such contract, to which defendant assented by letter sent to both plaintiff and his attorneys, the effect was a rescission of the contract by mutual consent, and plaintiff could not thereafter maintain an action for its breach.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 104; Dec. Dig. § 79.*]

In Error to the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Action at law by Francis E. S. Wolfe, to the use of T. Rowland Slingluff, assignee, against the International Fire Insurance Company of Ft. Worth, Tex. Judgment for defendant, and plaintiff brings error. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

This is an action at law originally instituted in the superior court of Baltimore City on the 11th day of October, 1911. There was a motion to quash the writ of summons in that court. This motion was overruled with leave to plead. The case was then removed to the District Court for the District of Maryland.

The statement of facts by the learned judge who heard the case below is as follows:

"The plaintiff sues the defendant for an alleged breach of contract by which the plaintiff became general agent for the defendant. The plaintiff will be called the 'agent,' the defendant the 'company.'

"The declaration sets forth the agreement in full. By it the agent became general agent of the company, for the states of Maryland and Pennsylvania. In that territory he was to appoint all agents or subagents. His compensation was to be 32½ per cent. on all premiums, less return premiums and reinsurances, collected for all business written within the territory for account of the company. Many of the expenses of the agency were to be paid by the agent, others by the company. The agent was to give bond for $20,000.

"The contract provided: 'It is understood and agreed that this contract shall continue in force after approval of said bond for ten years from the date hereof. * * * It is further agreed that said company reserves the right to cancel this contract if at any time after the first year, or any year thereafter, the losses and expenses exceed the receipts for two consecutive years.'

"The agent agreed to make certain daily and monthly reports and to remit at the times and in the manner prescribed in the agreement. This agreement was dated May 31, 1910. The agent gave the bond and entered on the discharge of his duties under the agreement.

"The declaration alleges that on the 4th of August, 1911, the company wrote him that the board of directors, after thoroughly analyzing his account and business sent to the company, found that the same had produced a very heavy fire loss and for that reason the board had determined to ask him not to send any new business or renewals from the date of the receipt of the letter, excepting risks of the preferred class. He was directed to decline all special hazards and outside unprotected risks. The letter said: 'You are familiar with the excess losses which your territory has produced, and as a matter for our own protection we are forced to demand a more limited classification. You are also aware that the company cannot be reasonably expected to maintain an agency plant at a state that is producing such excessive losses. We desire as far as within our power to minimize the losses and ask your hearty co-operation and trust you will agree with us and work to attain the end desired.'

"The declaration says that the company thereafter declined to accept policies of insurance, whether the class known as new business or renewal, written by the agent and forwarded to the company, and from the time of such letter the company wrongfully refused to permit the agent to perform said contract. It alleges the readiness and willingness of the agent to have performed it. It says that the action of the company in refusing to accept from the agent the insurance policies, other than risks of the preferred class, amounted to a breach of the contract to the damage of the agent.

"The company for a first plea said that the contract was by mutual agreement rescinded, and set forth in the plea certain correspondence which had passed between the agent and the company. From this correspondence it appears that the agent, through his attorneys, on the 10th of August, declined to admit the right of the company to limit in the manner attempted the business he might do. He notified the company that until further informed he should continue to write business as theretofore. On the 23d day of August he again wrote through his attorneys. These gentlemen said that they had advised the agent that the demand to restrict his future business to the preferred class and the company's subsequent refusal to retain insurance written by the agent for risks other than the preferred class was practically a nullification of his contract of agency and entitled him to rescind the contract and to demand the return of the consideration therefor as well as compensation for the losses he has sustained. They add: 'By reason of this breach of contract by our company in manner indicated, Mr. Wolfe has concluded to

rescind the same and we hereby notify you of his rescission thereof and demand on his behalf a return of the consideration therefor as well as full compensation for his expenditures and losses.'

"They further say that they had instructed the agent that owing to the breach of contract by the company he was not to make his monthly remittances as agent until the matter was adjusted. They added that in order to minimize the company's loss as much as possible he would, until further notice, without waiving any of his rights, continue to forward such business as may be forthcoming until the company could make such other arrangements as it saw fit to care for the same.

"On the 26th of August the company replied through its attorneys. In that letter they said, 'We accept your notice of such rescission.' The agent was notified not to write any further business. They said that if the agent did not make his monthly remittances as agent in accordance with the terms of the contract now rescinded by him suit would be brought upon his bond. In another letter addressed to the agent and written on the same day as the last, viz., August 26, 1911, he was told that the company accepted notice of his rescission of the contract 'which, in accordance with your election, we now treat as terminated.'

"The company's second plea alleged full performance by it and breach by the agent. On the second plea the agent joined issue, and to the first plea he replied that from the correspondence contained in the company's first plea and from the additional letters reproduced in the agent's replication it did not appear that there was any joint concurrence by the parties to the said contract under which the same was by mutual agreement rescinded. These additional letters consist of a letter from the agent's attorneys to the company under date of September 8, 1911, in which they demanded $25,000 damages and loss sustained by the agent by reason of breach by the company of its contract with him. $5,000 of this is the amount required of the agent for the purchase of stock in the company in order to obtain the general agency. $20,000 was the estimated loss of profits on business written and to be written during the life of the contract if it had not been broken. In reply to this letter the company's attorneys under date of September 11, 1911, explained that 'the losses of the company had become so great and were increasing so rapidly that the officers of the company called together the directors from the different parts of the state * * * to consider what could be done to reduce these losses and protect the interests of the company, both of the policyholders and the stockholders.'

"The directors 'decided that the interest of the company imperatively demanded that steps be taken at once to curtail the losses, and with this end in view, and this only, they decided that in those states where the business had been unprofitable and where the losses had been so great, they would, at least for the time being, instruct their agents to eliminate the unprofitable business and take only such risks as the company might safely carry.' They stated that the agent 'seemed to take the view that this was an assault upon his contract, and through you, as we understand the communication, he threw up the contract, and the company, through us, accepted the resignation and has since then been proceeding on the basis of his being no longer a general agent of this company.'

"In reply under date of September 19, 1911, the attorneys for the agent write, among other things, that the business 'he handed in to your company was such business as was done by all insurance companies in the ordinary course of insurance business, and that when you cut him down and limited him to the character of insurance which you required him to take, his business was practically gone and that he would not realize enough from it to pay his office rent, much less the many other expenses of the same. From this viewpoint we have advised Mr. Wolfe that the action on the part of your company was a rescission of the contract and he accepted the same as a rescission and a violation of the terms of the contract which would entitle him to substantial damages for such violation.' 'If we are correct in this view, Mr. Wolfe will be entitled to repayment of the $5,000 consideration and also to such damages as he may have sustained measured by the profits which he might have made during the continuance of the agreement.'

"On September 27th the attorneys for the company answered. They said, among other things: 'If we understand your position, it is that Mr. Wolfe is entitled to a repayment of the consideration which he paid for stock in the "company"; but you do not say whether he still owns the stock, nor do you offer to return it to the company. We would like, therefore, to know definitely whether Mr. Wolfe still owns this stock, or whether he has disposed of it, and what he considers the stock worth. We do not understand that, in any event, he would be entitled to receive back the consideration, even if he should return, or offer to return, the stock. It was a reasonable requirement on the part of the company, in appointing its general agents, that they should have a substantial interest in the company by owning stock, and Mr. Wolfe certainly could not claim that he could throw up his agency because of a real or fancied grievance, and then cancel his stockholding and recover back the money he had paid for it.'

"On October 7th the agent's attorneys answered that they had taken it for granted that the proposition made by them that the $5,000 should be returned to the agent included a return by him of the stock. This letter stated that the suit would be brought in a few days.

"The company demurred to this replication. It says that at the time suit was brought the contract had been rescinded by mutual consent. The agreement had so far ceased to exist that no action could be maintained upon it. The agent denies that what passed between the parties amounted to a rescission. He does not question that he in so many words told the company that he had elected to rescind the contract and the company expressly said that it accepted such rescission. He does claim, however, that all that in fact happened was that he offered to rescind upon terms that the company could not accept the offer otherwise than upon such terms, and that it never did assent to the latter. If so the rescission never became effective. The contract still remained in force. The correspondence does not suggest that the agent thought that in telling the company that he had elected to rescind he supposed he was making it an offer. Quite clearly he conceived himself to be exercising a legal right which under the circumstances as he saw them was absolute. Having so elected, he made demand upon the company for those things to which in consequence of his choice he felt he had become entitled. The company in effect replied: 'We assent to your rescission of the contract. We do not think that your view of what follows from such action is in all respects correct.' If he had chosen, the agent might, thereupon have safely acted upon the assumption that the contract was at an end. The company would not have been heard to say, 'We did not assent to your rescission of the contract because we expressed our nonconcurrence in your understanding of the legal consequences which it entailed.'"

The court below sustained the defendant's first plea and also the demurrer to the declaration upon which final judgment was entered in favor of the defendant, and the case comes here on writ of error.

T. Rowland Slingluff, of Baltimore, Md. (Slingluff & Slingluff, of Baltimore, Md., on the brief), for plaintiff in error.

Albert C. Ritchie, of Baltimore, Md. (Ritchie & Janney, of Baltimore, Md., on the brief), for defendant in error.

Before PRITCHARD, Circuit Judge, and BOYD and DAYTON, District Judges.

PRITCHARD, Circuit Judge (after stating the facts as above). [1] In order that we may discuss the questions involved herein in their logical order, we will first inquire as to whether there was a breach by the plaintiff of any covenant in the agreement made in 1910; that being the contract upon which this proceeding is based.

The plaintiff in error will be referred to as "plaintiff," and defendant in error will be referred to as "defendant"; such being the relative positions the parties occupied in the court below.

The covenants on behalf of the defendant company may be epitomized as follows: First, that the agent shall receive a commission of 32½ per cent. for all premiums, less return premiums and reinsurances, collected for all business written in said territory; second, that the company will furnish blank policies and daily reports and pay all losses and charges for taxes, legal service, adjustments, etc.; third, that the contract shall continue in force for ten years with the privilege of canceling after two years if it should prove unprofitable.

After a careful consideration of the provisions of the contract, we are of the opinion that it does not contain an undertaking by the company to accept, and no authority to the agent to write, any particular class of risks. There is no reference in the agreement to this subject, and therefore we must assume that it was the purpose of the defendant company to reserve the right unto itself to determine from time to time as to the class of risks that the agent was to write, and it is but natural that the contract should have been written as it was, when we consider the nature of the business in which the defendant company was engaged, and the obligation that it owed to its stockholders and others interested in its financial welfare.

As we have stated, there is no covenant to the effect that plaintiff was to be permitted to write insurance of any particular class; in other words, the contract is silent as respects this point, thereby indicating a purpose on the part of the parties thereto to leave that question in the discretion of the defendant company.

Owing to the character of business in which the defendant company is engaged, it necessarily follows that its success depends in a large measure upon its ability from time to time to increase or diminish the number and character of policies it may issue, so as to properly meet existing conditions. Therefore, in the absence of an express agreement on the part of the company to the contrary, it would be unreasonable to hold that it was the intention of the defendant company in this instance to issue policies of every class whatsoever and not reserve unto itself the right to restrict those to be issued to a particular class in the event it should in the future appear that the issuance of policies of a certain class would result disastrously, and thereby impair the financial ability of the company.

We are therefore of the opinion that the ruling of the court below as respects this phase of the question was eminently proper.

[2] However, it is also insisted by counsel for defendant that the contract in this case has been rescinded, and that therefore in no event would an action lie for an alleged breach thereof, and, even if the contract was broken by the defendant, still the plaintiff would not have a cause of action for the breach thereof, because the plaintiff in the first instance elected not to sue for the breach, but to rescind the contract.

The court below in referring to this phase of the question said:

"At the time the correspondence began the agent thought that the company had broken its contract. If that were so, he had a right, if he would, to treat the contract as still alive and to sue for the damages he had suffered by its breach. He was not required to do so. He might, if he preferred, rescind it. If he did the latter, he could demand back the consideration he had

paid, repayment of money laid out by him and compensation upon a quantum meruit for the services he had rendered. If he elected to treat the contract in force, by suing for damages for its breach, he could not ask for the return of the consideration he had paid. The measure of damages for the breach of a contract is the amount which would put the injured party in the same position as he would have been had the contract been performed. He who recovers such damages is in theory of law placed in the same situation he would have been had no breach occurred. To give him back in addition the consideration he had paid to induce the other party to enter into the contract would be to give him all the benefits of the contract while relieving him from all its burdens."

The court below held that the plaintiff had offered to rescind the contract, and that the defendant acquiesced therein. It appears that on the 4th day of August, 1911, the defendant company after carefully considering the situation, "on account of the heavy fire loss," instructed plaintiff "not to send us any new business or renewals from the date of the receipt of this letter, except risks of the preferred class, declining for us all special hazards and outside unprotected risks." Thus the plaintiff was fully informed as to the course that the defendant company had decided to pursue, and the reason therefor, and after making further inquiry by letter dated August 10, 1911, demanded the exact cause which prompted the finance committee of the defendant company to make the recommendation it did, and on August 23, 1911, plaintiff's attorneys wrote another letter, in which it was asserted that the defendant company did not have the right to fix any limitation as to the character of risks to be written, and, among other things, said:

"We have, therefore, advised him that the demand from your company to restrict his future business to the preferred class, as stated in your letter of August 4th, and its subsequent refusal to retain insurance written by him for risks other than the preferred class, as enumerated in your letter to him of August 18, 1911, is practically a nullification of his contract of agent, amounting to a breach thereof, and entitles him to rescind the contract and demand the return of the consideration therefor as well as compensation for the losses he has sustained.

"By reason of this breach of contract by your company in manner indicated, Mr. Wolfe has concluded to rescind same, and we hereby notify you of his rescission thereof and demand, on his behalf, a return of the consideration therefor as well as full compensation for his expenditures and losses."

After the receipt of this letter, to wit, on the 26th day of August, 1911, the defendant company addressed a letter to the plaintiff, in which, among other things, the following language was used:

"Assuming that you, as attorneys and agents for Mr. F. E. S. Wolfe, of your city, have the right to give notice to the International Fire Insurance Company, of Mr. Wolfe's rescission of his contract with that company, we accept your notice of such rescission."

A similar letter was addressed to the plaintiff, and the language employed therein is such as to leave no doubt as to its true meaning. In the first place, the attorneys for the plaintiff clearly and concisely stated the reasons why they thought the contract should be rescinded, and then notified the defendant company that the same had been rescinded, and, in reply thereto, counsel for defendant advised the attorneys for the plaintiff that the notice of rescission had been ac-

cepted, and a copy of this letter was also sent to the plaintiff. Here the correspondence as respects this matter ends.

If the plaintiff, when notified as to the action of his attorneys, had felt that they had exceeded their authority in rescinding the contract, he could have notified the defendant company that his attorneys had exceeded the scope of their authority in proposing to rescind the contract, but, instead of so doing, the plaintiff remained silent, and thereby assented to what had been done in the premises.

An inspection of the letters and other documentary evidence in this case forces us to the conclusion that the refusal of the defendant company to permit plaintiff to write only the preferred class of policies was considered by plaintiff as a breach of his contract, and that he then and there deliberately elected to rescind the contract and to demand the return of the consideration which he had paid in the first instance.

It was for the court below, and not the jury, to decide as to whether upon the established facts there had been a rescission of the contract.

In the case of Sea Insurance Co. v. Johnston, 105 Fed. 286, 44 C. C. A. 477, the correspondence between the agent and the company was very much like that of the case at bar, and there the court held that the court below acted properly in deciding that the correspondence between the parties constituted a rescission of the agreement. In that case the court, among other things, said:

"On the question under discussion—the question of rescission—there is no conflict in the legal evidence. It depends upon the correspondence, with nothing needed to supplement it, unless, perhaps, the conceded fact of the acceptance and collection and failure to return the check inclosed in the letter of February 21st. The Circuit Court should have granted the request of the Sea Insurance Company, and directed the jury to find a verdict for the defendant."

When we consider the correspondence between the parties in this instance, we are clearly of the opinion that the same constitutes a rescission of the agreement, and, such being the case, it follows that an action of this character cannot be based thereon.

For the reasons stated, the judgment of the lower court is affirmed. Affirmed.