MERCHANTS' LIFE INS. CO. v. GRIS-
WOLD. (No. 6007.)

(Court of Civil Appeals of Texas. April 23,
1919. Rehearing Denied June 4, 1919.)

1. CORPORATIONS ⚖═399(2)—POWER OF DI-
RECTORS—CONTROL OF BUSINESS AFFAIRS—
LIMITATION OF CHARTER AND BY-LAWS.

While the directors of a corporation, subject
to limitations of charter and by-laws, have as
much control of its business affairs as an in-
dividual has over his own business, their pow-
er is no greater.

2. CONTRACTS ⚖═303(3)—BREACH—LIABILI-
TY FOR DAMAGES—ACT OF GOD.

Neither an individual nor a corporation has
the legal right to breach a contract for the rea-
son that it may be to the financial interest of
such party to do so, and either is liable for dam-
ages caused by a breach of contract, even though
it be occasioned by the act of God.

3. MASTER AND SERVANT ⚖═23—BREACH OF
EMPLOYMENT CONTRACT BY RETIRING FROM
BUSINESS—LIABILITY FOR DAMAGES.

If one by retiring from business breaks a
contract of employment, he is liable to employé
for damages.

4. INSURANCE ⚖═85—EMPLOYMENT CONTRACT
—BREACH—LIABILITY FOR DAMAGES.

Where the agent for life insurance company
bound himself to engage in no other business
during the life of his contract, traveled over his
territory and spent both time and money in es-
tablishing agencies, which both parties contem-
plated would be done, and company did not quit
doing business as provided in contract, but
voluntarily amended its charter so that it could
not thereafter continue the business under the
contract of writing insurance on the assess-
ment plan, and there could be no renewals or
commissions thereon, it terminated the agency,
and the company was liable for damages for
breach.

5. CONTRACTS ⚖═10(2)—EMPLOYMENT—MU-
TUALITY.

A contract which bound an insurance com-
pany to employ an agent for five years, and
bound the agent to work for that period un-
less the contract should be sooner terminated
in one of the methods stipulated, and providing
for compensation by a percentage on new and
renewal insurance premiums, *held* not void for
want of mutuality.

6. CONTRACTS ⚖═10(2)—EMPLOYMENT—RIGHT
TO TERMINATE.

A contract between an insurance company
and its agent was not rendered unilateral by a
stipulation under which the agent could termi-
nate the contract at his option by giving 90
days' notice in writing of his intention to do
so, nor was the contract made thereby one at
will on the part of the agent.

7. CONTRACTS ⚖═10(1)—VALIDITY—TERMINA-
BLE AT OPTION—CONSIDERATION FOR OP-
TION.

A contract is not void because it is termi-
nable at the option of one of the parties if there
is a valid consideration for such option.

8. INSURANCE ⚖═73 — EMPLOYMENT CON-
TRACTS—CONSIDERATION FOR OPTION AGREE-
MENT—ESTABLISHMENT OF AGENCIES.

The time and money expended by a life in-
surance agent in establishing agencies, being
contemplated by the parties, constitutes a suffi-
cient consideration for the agent's option to ter-
minate the employment contract upon 90 days'
notice.

9. INSURANCE ⚖═85 — EMPLOYMENT CON-
TRACT—BREACH—CHANGE OF BUSINESS—OF-
FER OF RE-EMPLOYMENT.

In an action against an insurance company
for breach of an agency contract to write in-
surance on the assessment plan, by ceasing to
write such insurance an offer to the agent of
a contract to write on the level premium plan,
is material only in so far as it tends to reduce
the amount of recovery by showing what he
could have earned during the life of his con-
tract and after its breach.

10. INSURANCE ⚖═85 — EMPLOYMENT CON-
TRACT—OFFER OF RE-EMPLOYMENT OF INFE-
RIOR QUALITY—DUTY TO ACCEPT.

Where an insurance agent was under con-
tract to sell insurance on the assessment plan,
and the contract was breached by the company
ceasing to sell such insurance and adopting the
level premium plan, the agent was under no ob-
ligation to accept employment of an inferior
quality under the latter plan until he had tried
to obtain other satisfactory employment.

11. INSURANCE ⚖═85 — EMPLOYMENT CON-
TRACT—BREACH—NEW AGENCY CONTRACT—
REFUSAL OF WORK—BAD FAITH OF AGENT
—QUESTION FOR JURY.

In an action by an agent against insurance
company for breach of an employment contract,
whether the employé agreed to work for em-
ployer as agent under its new plan of insurance
with inferior contract, and the company annul-
led the contract on account of agent's bad faith
in going to work for another company, was an
issue of fact for the jury, under the plead-
ings and evidence, which was sufficient to sus-
tain a finding upon the issue for plaintiff.

12. DAMAGES ⚖═40(2)—BREACH OF CONTRACT
—CONTEMPLATED PROFITS.

In a proper case contemplated profits may
be recovered as damages for breach of contract.

13. DAMAGES ⚖═24—UNCERTAIN OR CONTIN-
GENT DAMAGES — AMOUNT — EXISTENCE OF
ANY DAMAGES.

The rule that damages which are uncertain
and contingent cannot be recovered does not
apply where the uncertainty is only as to the
amount of loss suffered by breach of a con-
tract, but where it is uncertain as to whether
any damages resulted therefrom.

14. CONTRACTS ⚖═40(2)— BREACH — LOSS OF
PROFITS—EVIDENCE.

Damages for loss of profits recoverable for
breach of contract must be such profits as ap-
pear from the contract itself, and not the in-
ability by reason of such breach to carry out
some collateral or speculative venture, and the
evidence must furnish some standard by which
the amount of the profits which would accrue

⚖═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

but for the breach can be estimated with some degree of probability.

**15. DAMAGES ⟨≈⟩190—BREACH OF EMPLOYMENT — CONTRACT — PROFITS — EVIDENCE OF PAST PROFITS.**

In an action by an insurance agent for breach of an employment contract where he had the exclusive right to represent the company in 42 wealthy and populous counties, evidence of profits the agent had made *held* a sufficiently accurate standard to enable the jury to estimate the amount of profit the agent would have received under the contract had employer not breached it.

**16. ' INSURANCE ⟨≈⟩85—BREACH OF EMPLOYMENT CONTRACT—LIABILITY FOR DAMAGES—REASONABLY RESULTING DAMAGES.**

Where an insurance company breached its contract with its agent by ceasing to write the kind of insurance embraced in the employment agreement, it became liable to him for all damages reasonably resulting from such breach.

**17. DAMAGES ⟨≈⟩40(2) — EMPLOYMENT CONTRACT—BREACH—ELEMENTS OF DAMAGES.**

In an action by an insurance agent against the company for breach of an employment contract, such profits as it reasonably appeared were a loss to the agent by reason of the company's breach of the contract were proper elements of damage.

**18. INSURANCE ⟨≈⟩85 — EMPLOYMENT CONTRACT BY INSURANCE COMPANY—BREACH—RENEWALS—PREMATURE ACTION.**

Where an insurance company breached its contract with an agent both as to commissions on assessment policies that might have been written, and as to renewals thereof which would otherwise have accrued, the agent's suit for damages was properly brought for the breach, although before the stipulated termination of the contract, and it was not error to submit that the company was indebted to the agent on renewal contracts.

**19. APPEAL AND ERROR ⟨≈⟩1062(1)—HARMLESS ERROR—BREACH OF CONTRACT—REFERENCE TO DAMAGE OR DEBT.**

In an action by an agent against an insurance company for breach of employment contract, compensation of which was based upon new and renewal assessment premiums, the court was technically in error in referring, in question submitted to jury, to compensation as a debt; but, where the verdict as to this item was neither more nor less by reason of the misnomer, the error must be deemed harmless.

**20. INSURANCE ⟨≈⟩85—BREACH OF EMPLOYMENT CONTRACT—DAMAGES BASED UPON INSURANCE COMMISSIONS—EVIDENCE TO SUPPORT VERDICT.**

In an action by an insurance agent against the company for breach of an employment contract, where the amount of damages depended largely upon the number of policies written and which would have been written, and which would not have lapsed during the period of his contract, which amount in no case could have been reduced to a certainty, and which might have been most satisfactorily shown by experts,

evidence *held* such that the jury's verdict for plaintiff cannot be said to be unsupported.

**21. TRIAL ⟨≈⟩121(2)—CONDUCT OF COUNSEL—STATEMENT AS TO DAMAGES.**

In an action for breach of employment contract, the statement of defendant's counsel that the evidence would sustain a verdict for $25,000, there being nothing inflammatory in its character, was not misconduct, counsel having the right to present to the jury his deductions from the evidence.

**22. APPEAL AND ERROR ⟨≈⟩1060(1)—TRIAL ⟨≈⟩115(2)—HARMLESS ERROR—MISCONDUCT OF COUNSEL—STATEMENT AS TO ANSWER OF SPECIAL QUESTIONS.**

In an action for damages for breach of an employment contract, statement of ' plaintiff's counsel, "Remember, if you want the plaintiff to recover, answer the first question, 'No,' " *held* improper, since it ought not to be assumed that an impartial jury wanted to return a verdict for either party, but that they desired to return such verdict upon special issues as the evidence demanded, but such misconduct did not constitute reversible error where the jury must have known how such first question must be answered in order that plaintiff might recover.

Error from District Court, McLennan County; H. M. Richey, Special Judge.

Action by S. M. Griswold against Merchants' Life Insurance Company. Judgment for plaintiff, and defendant brings error. Judgment affirmed.

Locke & Locke, of Dallas, for plaintiff in error.

S. J. T. Smith, Alva Bryan, and J. N. Gallagher, all of Waco, for defendant in error.

### Findings of Fact.

JENKINS, J. Plaintiff in error, which will hereinafter be referred to as the company, is a life insurance company, chartered under the laws of Iowa, and doing business in Texas under a legal permit. Prior to February, 1915, it was an assessment association, legally doing business in Texas on the assessment plan, under the name of the Merchants' Life Association. On February 9, 1915, it amended its charter, whereby it changed from the assessment to the level premium, or old line, plan, and changed its name to Merchants' Life Insurance Company, preserving, however, its corporate identity, with authority to carry out its previous contracts.

On April 1, 1914, the insurance company entered into a written contract with the defendant in error, who will hereinafter be referred to as Griswold, which, as far as it goes, is correctly summarized in the company's brief as follows:

"(1) The plaintiff was given exclusive control of specified territory.

"(2) The plaintiff agreed to devote all his time and ability to the work of the agency.

⟨≈⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"(3) 'Subject to the provisions hereinafter contained, this contract shall continue for a period of five years.'

"(4) 'It is understood and agreed that the said second party (the plaintiff) shall have the option at any time of terminating the agency by giving the first party (the defendant) ninety days' notice in writing of his intention to give up the agency hereby established.'

"(5) The continuance of the agency was conditioned upon the production of a specified amount of business in each contract year and in each quarter of each contract year.

"(6) 'Should the second party (the plaintiff) fail to live up to and fully comply with the terms, agreements, and conditions of this contract, then the said contract, at the option of the first party (the defendant), may be terminated by the first party giving the second party ninety days' written notice of its desire to so terminate the said contract.'

"(7) 'It is further understood and agreed by the parties hereto that should the laws of Texas be so amended hereafter, or should the party of the first part (the defendant) for any reason whatever deem it advisable to quit business in the said state of Texas during the life of this contract, then at and from the time the said association is no longer authorized to do business in the said state of Texas this contract shall be utterly null and void so far as any future business contemplated by the contract is concerned, but as to all the rights and liabilities of the several parties existing at the time of the said cessation of business the contract is to remain in full force and effect.'

"(8) 'It is further agreed that the contracts made on the first day of April, 1912, the first day of July, 1912, and the first day of January, 1914, are hereby terminated, except that so long as the second party (the plaintiff) writes the amount of insurance provided for in this contract, and remains the agent of said company, he shall be entitled to receive the renewal commission provided for in said contracts hereby terminated, during the period and under the terms and conditions that the renewal was to be paid under the original contracts.'

The contracts of April 1, 1912, July 1, 1912, and January 1, 1914, were substantially the same as that of April 1, 1914, under which this suit was brought. There was some difference as to territory and commissions.

The ninth paragraph of the contract provided that Griswold should receive "75 per cent. of the initial payment, being the membership fee, as provided in the articles of incorporation, upon all accepted applications, which shall be in full conpensation of every kind and description which he or his subagents shall receive from said association, whether for commission, traveling or other expenses, except as hereinafter provided." This was afterwards increased to 80 per cent.

In a subsequent part of the contract it was provided that Griswold should have a renewal commission of 75 cents, for a period of five years, on each thousand dollars of insurance secured for, and accepted by, the company within the territory granted to him.

About February 15, 1915, the company notified Griswold to quit writing insurance on the assessment plan, and soon thereafter offered him a contract to write insurance for it under its changed or level premium plan. Griswold declined to sign said contract, and brought this suit for damages, alleging a breach of the contract of April 1, 1914, claiming as such damages the profits which he would have made under said contract, including his commissions on renewals but for such breach.

The cause was submitted to a jury on special issues; in response to which they found that the company was indebted to Griswold, on business actually written, $5,000, and for damages on lost profits as to future business, $20,000, and judgment was entered in accordance therewith. The evidence was sufficient to sustain these findings. Such other facts as are material to the issues here involved are stated in our opinion herein.

### Opinion.

[1, 2] The first assignment of error herein is:

"The court erred in submitting to the jury its fourth special issue for reasons as follows:"

These reasons are subsequently set out in the company's brief as propositions and points thereunder, and need not be here stated.

The fourth special issue is as follows:

"Fourth Question: State in what amount, if any, plaintiff has been damaged by his inability to write new business under his new contract of April 1, 1914, and modified by supplemental contracts of December 30, 1914, and January 1, 1915, on and after the first day of March, 1915.

"In answering this question you may take into consideration the gross amount of commissions which, under all the facts and circumstances, you find the plaintiff might be reasonably expected to have received from business written or procured by him to be written under the terms of said contract and supplements, and any renewal commissions thereon, if any, less such expenses as you find he might reasonably have incurred in writing and procuring the writing of such business, and less such sums as you may find from the evidence he has received, and may reasonably be expected to receive, during the life of said contract as the result of other employment, after deducting therefrom the reasonable and necessary expenses incident to such employment.

"Answer to the fourth question: $20,000.00."

The company's contentions under this assignment may be summarized as follows:

(a) The company did not breach its contract for the reason it was provided therein that the company might withdraw from the state if for any reason it should deem it advisable to do so.

(b) The directors had the power to withdraw from the state, and thus terminate the contract, if, in their discretion, they deemed it to the interest of the company to do so.

(c) The contract was void for want of mutuality.

(d) The company offered to continue Griswold in its employment, and he refused to accept same.

(e) Griswold accepted a new contract with the company, which by its terms abrogated the contract herein sued on.

(f) The evidence was insufficient to form a basis for an answer to said fourth issue.

We will discuss these propositions in the order named:

(a) As will be seen from the seventh clause of the contract as set out in our statement of facts, it was provided that if the company "for any reason whatever should quit business in Texas the contract should thereafter be null and void."

It is the contention of Griswold that, under the doctrine of ejusdem generis, it should be held that the company was permitted to terminate the contract by quitting business in Texas, only in the event it was rendered necessary to do so by adverse legislation or ruling of the insurance department of the state; that at least the contract is ambiguous, and therefore oral testimony was admissible to show that this is the meaning that the parties intended; and that the oral testimony admitted by the court (over the company's objection) sustained this contention.

It is unnecessary that we should pass upon this matter for the reason the company did not quit business in Texas, but was continuing to do business in this state to the time of the trial.

(b) It is true that the directors of a corporation, subject to the limitations in its charter and by-laws, have as much control over the business affairs of a corporation as has an individual over his own business, but not more so. Neither an individual nor a corporation has the legal right to breach a contract for the reason that it may be to the financial interest of such party to do so. On the contrary, a party who breaches a contract is liable in damages therefor, even though such breach may have been occasioned by the act of God. Ins. Co. v. Watkins, 183 S. W. 437; Ry. Co. v. Boyce, 171 S. W. 1094.

[3, 4] The company cites, in support of its contention as to the right of its directors to change its plan of doing business, Ins. Co. v. Maclure, L. R. 5 Ch. App. 737 (an English case); Pellet v. Mfg. Co., 104 Fed. 502, 43 C. C. A. 669; Wolfe v. Ins. Co. (D. C.) 197 Fed. 188; Id., 207 Fed. 262, 124 C. C. A. 648; Ins. Co. v. Burman, 141 Fed. 835, 73 C. C. A. 69; Moore v. Ins. Co., 168 Fed. 496, 93 C. C. A. 652; and Wheeler v. Ins. Co., 227 Fed. 369. 142 C. C. A. 65.

The last three cases were contracts terminable at will, and therefore have no application to the instant case. The Wolfe Case was one of general agency for a fire insurance company. The company did not terminate the agency, but only restricted the agent to risks that were not hazardous and which had proved unprofitable to the company. The right of the directors of the company so to do was clearly within the contemplation of the parties when the contract was signed. Applying this rule to the instant case, had the company instructed Griswold not to accept a certain class of persons for the reason that it did not consider them good risks, such restriction being in good faith, and not for the purpose of destroying the value of Griswold's contract, would not have been a violation of the contract, though it might have reduced Griswold's profits.

In the Maclure Case, supra, the court held that an insurance agent who held a contract whereby the company agreed to pay him £500 per annum for five years, and 10 per cent. commission on all business secured by him, could recover the full amount of his salary, but not the profits which might have resulted from business done by him but for the breach of the contract. The company breached the contract by voluntarily retiring from business. The decision appears to be based upon the idea that to compel the company to pay the agent for loss of his prospective commissions would, in effect, be to allow him to force the company to continue business for his benefit. The reasoning is unsound. No one can be forced to continue business for the benefit of an employé; but, if one by retiring from business should breach his contract with an employé, he would be liable to such employé for the damages occasioned by such breach. For illustration: Suppose a merchant should employ a clerk for 12 months at a stated salary, but at the expiration of six months should retire from business. Under the decision in the Maclure Case the clerk would be entitled to recover his salary for the remaining six months, less what he was able to earn for that time in some other employment. In other words, the clerk would recover such damages as he had suffered by reason of the breach of the contract. Why should he not be entitled to recover such damages if he was employed upon a commission basis instead of a salary?

We are not now discussing the character of evidence required to determine the amount of damages recoverable if the contract was on a commission basis, but only the legal principle that compensation will be allowed for breach of a contract. The question of recovery of prospective earnings or profits as damages for breach of contract will be discussed in a subsequent part of this opinion.

In Pellet v. Ins. Co., supra, Judge Grosscup seems to have adopted the view expressed in the Maclure Case, viz. that to allow an agent to recover for commissions which he might have earned had the company continued business would be, in effect, to permit such agent to force the company to continue business for his benefit. This case was decided by a circuit court, Judges Seaman and Woods sitting with Judge Grosscup. The associate judges concurred in the result reached, but did not indorse the reasons given by Judge Grosscup. Judge Seaman, in his concurring opinion, based the same upon:

"(1) That suit was commenced while performance under the contract was continuing on the part of the plaintiffs, and under which they accepted benefits thereafter; (2) that the plaintiffs practically abandoned the contract by accepting inconsistent obligations before the alleged act of abandonment on the part of the defendant, and when performance by the latter was neither refused nor made impossible; and, on the case as a whole, (3) that the undisputed circumstances show the action to be prematurely brought as well as without substantial merit. Therefore the judgment is rightfully affirmed." 104 Fed. 512, 513, 43 C. C. A. 680.

The facts in the Pellet Case further differentiate it from the instant case, as appears from the following excerpt from Judge Grosscup's opinion:

"The plaintiffs in error conducted a general insurance agency, and represented, in addition to the defendant in error, five or six other companies. It is not claimed that, upon the strength of the making and continuance of the contracts sued upon, they enlarged their office expenses, increased their clerical force or other equipment, or in any way injuriously assumed liabilities, or made preparations, that would not otherwise have existed."

In the instant case Griswold bound himself to engage in no other business during the life of his contract with the company; he traveled over his territory, and spent both time and money in establishing such agencies, which it was contemplated by both parties, at the time the contract was made, he should do.

As hereinbefore stated, the company did not quit doing business in Texas, but, by voluntarily amending its charter so that it could not thereafter continue business on the assessment plan, it rendered itself incapable of carrying out its contract with Griswold, whose remuneration under the contract depended entirely upon a percentage of the first assessments paid by policy holders, and renewal commissions thereon. There could be no such assessments under the plan as changed.

Newcomb v. Ins. Co., 51 Fed. 725, Id., 62 Fed. 97, 10 C. C. A. 288, was a case wherein, as in the instant case, the insurance company changed from the assessment or natural premium plan to the level premium plan, commonly known as old line insurance. The court said:

"It must be held, without doubt, that if the plaintiff was appointed an agent of the defendant company to solicit risks according to one method of insurance, and the company subsequently abandoned that mode of transacting business without his consent, and refused to permit the plaintiff to solicit risks according to such method or plan, then it, in effect, terminated the agency, and the act of the company in so doing was wrongful, unless, by the provisions of the contract existing between the parties, the company had reserved to itself the power of terminating the agency whenever it thought proper."

There was no such provision in the contract sued on. This suggests a sufficient answer to the argument that to allow an employé to recover profits, after the principal desires to quit business, is, in effect, to force the principal to continue business for the benefit of the employé. If the principal desires the privilege of terminating the contract by retiring from business, he should insert such provision in the contract; in which case the employé, of course, would be at liberty to accept or decline the employment on the terms offered.

[5] (c) The contract is not void for want of mutuality. It bound the company to give Griswold employment for five years, and it bound Griswold to work for the company for that period of time, unless the contract was sooner terminated in one of the methods therein stipulated. It was not terminated in either of such methods.

[6, 7] It is contended that the contract was unilateral, for the reason that Griswold had the right to terminate the same at his option by giving 90 days' notice in writing of his intention so to do. This did not constitute the contract one at will on the part of Griswold. He was bound to serve the company for 90 days after such notice. Besides, a contract is not void because it is terminable at the option of one of the parties, if there is a valid consideration for such option. Taber v. Dallas County, 101 Tex. 250, 106 S. W. 332; Ry. Co. v. Eldredge, 155 S. W. 1011; Ry. Co. v. Scott, 72 Tex. 76, 77, 10 S. W. 99, 13 Am. St. Rep. 758; Halff v. Waugh, 183 S. W. 843.

[8] If the contract should be held to be terminable at the option of Griswold, the time and money expended by him in establishing agencies, the same being in contemplation of the parties when the contract was made, constitutes a sufficient consideration for such option.

[9, 10] (d) It is true that the company offered to employ Griswold to write insurance under the level premium plan, but this fact is material only in so far as it may tend to reduce the amount of recovery by showing what he could have earned in other employment during the life of his contract and after

the breach of the same. The contract which it offered him was essentially different from that which he had. It did not give him any exclusive territory, and he would have been subject to discharge at the will of the company. Griswold was experienced in writing assessment insurance and had been successful therein. He had but a limited experience in writing insurance on the level premium plan, and had not made a success in this kind of insurance. He was under no obligation to accept employment of an inferior quality, at least not until he had tried to obtain other satisfactory employment. Buffalo Bayou Co. v. Lorentz, 177 S. W. 1184; Simon v. Allen, 76 Tex. 398, 13 S. W. 296. After having tried other employment without success, Griswold offered to go to work for the insurance company under the contract offered him, and it refused to give him such employment.

[11] (e) The company alleges that Griswold did in fact agree to work for it after it changed its plan of insurance, under a contract which annulled the contract herein sued upon, and that its subsequent refusal to permit him to work for it was on account of his bad faith in going to work for another insurance company. This was an issue of fact under the pleadings and the evidence, to be determined by the jury. It was submitted under a special issue, and the jury found thereon in favor of Griswold. The evidence was sufficient to sustain this finding.

[12] (f) It is the contention of the company that the evidence as to what Griswold would have earned under the contract, had the same not been breached, was not sufficient to justify the submission of the fourth special issue hereinbefore set out. It is well settled in this state, as well as in other jurisdictions, that in a proper case contemplated profits may be recovered as damages for breach of a contract. This point was fully considered by this court in Construction Co. v. Caswell, 141 S. W. 1015, 1017.

[13] This is in fact conceded in the able brief filed by the company's attorneys herein, who are not only lawyers of great learning and ability, but may be classed as experts in the law pertaining to insurance, if it be proper in any case to apply the term "expert" to a branch of the legal profession. Their contention on this point is not that the verdict of the jury is excessive as to the amount found, but that the evidence as to the profits that would have been earned in writing future business is too uncertain to justify a finding as to any amount of such profits; that it furnished the jury no standard by which to estimate such profits, but necessarily required that their verdict should be entirely a guess in the field of uncertain speculation.

It is true that the determination of the amount which Griswold might have been able to earn under his contract, but for the breach of same, is to some extent speculative and uncertain. But this is true in practically every case as to future profits which might have been realized under a contract but for the breach of the same. No one can tell with mathematical certainty what would have been the result of an event which never occurred. In the instant case Griswold may not live until the expiration of the time fixed in his contract; he may become disabled by accident or disease; for reasons satisfactory to himself, he might, by giving 90 days' written notice to the company, have terminated his contract; the agency which he had built up, and upon which he was in a large measure dependent for success, might have been destroyed by his agents accepting more remunerative employment; peculiarly bad trade conditions might have occurred, which would have prevented his writing the amount of insurance which he had obligated himself to produce, in which event his contract by its terms would have been automatically canceled. Uncertainties such as these necessarily exist more or less in all suits based upon loss of profits.

In Wells v. Ins. Co., 99 Fed. 222, 39 C. C. A. 476, 53 L. R. A. 55, the court quotes with approval from Dennis v. Maxfield, 10 Allen, (Mass.) 138, as follows:

"These earnings or profits were therefore within the direct contemplation of the parties when the contract was entered into. They are undoubtedly in their nature contingent and speculative and difficult of estimation. * * * Would it be a valid defense, in the event of loss, to say that no damages could be claimed or proved, because the subject of insurance was merely speculative, and the data on which the profits must be calculated were necessarily inadequate and insufficient to constitute a safe basis on which to rest a claim for indemnity? The answer is that in such cases the parties, having by their contract adopted a contingent, uncertain, and speculative measure of damages, must abide by it, and courts and juries must approximate as nearly as possible to the truth in endeavoring to ascertain the amount which a party may be entitled to recover on such a contract in the event of a breach."

There is more uncertainty as to the amount of damages resulting by wrongful injuries, or from death by wrongful act, than as to breach of contract; but it has never been held that such uncertainty is a bar to a cause of action for the recovery of such damages.

The rule that damages which are uncertain and contingent cannot be recovered does not apply where the uncertainty is only as to the *amount* of loss suffered by breach of a contract, but where it is uncertain as to whether *any* damages have resulted therefrom. Wells v. Ins. Co., supra; Joske v. Pleasants, 15 Tex. Civ. App. 433, 39 S. W. 590; Trigg v. Clay, 88 Va. 330, 13 S. E. 434, 29 Am. St. Rep. 723; Blagen v. Thompson, 23 Or. 239. 31 Pac. 647, 18 L. R. A. 315; Myers v. Ry. Co.,

43 App. Div. 573, 60 N. Y. Supp. 284; Lanahon v. Heaver, 79 Md. 413, 29 Atl. 1036.

[14] It is true that damages for loss of profits to be recoverable for breach of contract must be such profits as appear from the contract itself, and not the inability by reason of such failure to carry out some collateral or speculative venture; also that the evidence must furnish some standard by which the amount of the profits which would have accrued but for the breach of the contract can be estimated with some degree of probability.

[15] We think the evidence in this case complies with both of these requirements. It is apparent that both parties to the contract contemplated that Griswold expected to derive some profit therefrom, and that such profits would result from the commissions received by him on insurance that he might be able to secure through his efforts and through the efforts of his subagents. He was an experienced insurance agent in this character of insurance. He had been writing insurance for the company from April, 1912, to February, 1915, when the company breached the contract. The amount of insurance written by him for each year during this time was shown by the evidence. At the time the contract was breached he had the exclusive right to represent the company in 42 wealthy and populous counties in this state. A distinguished American said upon a memorable occasion: "I know of no way of judging the future except by the past." Judgments thus formed are not always accurate, but they are sufficiently so to control the actions of reasonable men in the most important affairs of life; and we think this standard is sufficiently accurate to have enabled the jury in this case to estimate the amount of profits which Griswold would have received under his contract had he been permitted to carry it out.

[16] Our conclusions under the first assignment of error may be summed up as follows:

(1) The insurance company breached its contract with Griswold, by reason of which it became liable to him for all such damages as reasonably resulted from such breach. Macgregor v. Ins. Co., 121 Fed. 493, 57 C. C. A. 613; Lewis v. Ins. Co., 61 Mo. 534; Israel v. Ins. Co., 111 Minn. 404, 127 N. W. 188; Crowell v. Ins. Co., 99 Minn. 214, 108 N. W. 964; Stowell v. Ins. Co., 61 App. Div. 58, 70 N. Y. Supp. 84; Ins. Co. v. Ross, 170 S. W. 1062; Newcomb v. Ins. Co., 51 Fed. 725; Id., 62 Fed. 97, 10 C. C. A. 288; Smith v. Smith, 116 App. Div. 165, 101 N. Y. Supp. 521; Lovell v. Ins. Co., 111 U. S. 264, 4 Sup. Ct. 390, 28 L. Ed. 426; United States v. Behan, 110 U. S. 338, 4 Sup. Ct. 81, 28 L. Ed. 170.

[17] (2) Such profits as it reasonably appeared were lost to Griswold by reason of the breach of the contract were proper elements of damage. See authorities hereinbefore cited, and also Dickinson v. Lyle, 130 S. W. 904; San Antonio v. Royal, 16 S. W. 1102.

[18] The second assignment of error is as follows:

"The court erred in submitting to the jury its third special issue, for that this action is brought for the recovery of damages for an alleged breach of contract, and not for the recovery of renewal commissions owing under such contract, and said issue, therefore, is not relevant or material to any question presented by the pleadings."

The company's contention under this assignment is, in effect, that this is a suit to recover damages for breach of a contract, and it was therefore error to submit to the jury the question as to how much the company was "indebted" to Griswold on renewal contracts; that, "if the termination of the agency was wrongful, the plaintiff's right to receive his renewal commissions from time to time as they accrued was not destroyed thereby; but neither was that right converted into a right to receive in advance of their accrual the commissions that would become due if and when the premiums were paid."

Griswold alleged that many of the policy holders were induced by the insurance company to exchange their policies for level premium policies, under which no renewal premiums will become due. The company having breached its contract, both as to commissions on policies that might have been written and as to renewals which otherwise would have accrued, this suit was properly brought for damages, including such amount as would have accrued to Griswold but for such breach. Wells v. Ins. Co., 99 Fed. 222, 39 C. C. A. 476, 53 L. R. A. 33. In this case the court quotes with approval from Dennis v. Maxfield, 10 Allen (Mass.) 138, as follows:

"The breach of the contract by the defendants has created only one cause of action in favor of the plaintiff. His compensation for this breach necessarily embraces all that he is entitled to recover under the contract." 99 Fed. p. 228, 39 C. C. A. 482, 53 L. R. A. 54.

[19] Griswold sued for loss of renewals as damages for breach of his contract. The court was technically in error in the third question in referring to such compensation as a debt, but we do not think that this could have influenced the jury to the injury of the company. Their verdict as to this item was neither more nor less by reason of this misnomer.

[20] The third assignment of error complains of the finding of the jury in response to the third question as being excessive. The answer was $5,000. Attorneys for the company analyze the testimony on this point, and make a showing that the verdict should have been for only $2,577.11. On the contrary, Griswold's attorneys claim that an analysis of the evidence from the viewpoint most fa-

vorable to the company shows that his renewal premiums would have amounted to $6,-311.25, and that a reasonable deduction from the evidence shows that he was entitled to recover on this item $7,919.67. The amount of this item depends largely upon the number of policies written, and which would have been written, by Griswold, which would not have lapsed during the period of his contract. The amount of this item, which in no case could have been reduced to a certainty, might have been more satisfactorily shown by the testimony of experts. We are not able to say that the amount found by the jury is unsupported by the testimony.

[21] The fifth and sixth assignments of error complain of statements made by counsel for Griswold in his closing argument to the jury. One of these statements was that the evidence would sustain a verdict for $25,000. There was nothing of an inflammatory character in this statement. Counsel had the right to present to the jury his deduction from the evidence.

[22] The other statement of counsel complained of was as follows: "Gentlemen of the jury, remember if you want the plaintiff to recover, answer the first question, 'No.'" This statement was improper. It ought not to be assumed that an impartial jury wanted to return a verdict for either party, but that their desire was to return only such a verdict as the evidence demanded. One of the advantages in submitting special issues is to require specific findings by the jury on issues of fact, without reference to their effect on the judgment to be rendered thereon. However, it must necessarily often happen that the effect of an answer is so evident that an intelligent jury should not fail to understand the same. In such case, while the conduct of an attorney in stating such effect to the jury is not to be approved, it would not constitute reversible error. Ry. Co. v. Fleming, 203 S. W. 108. Such was the fact in the instant case. The first question was:

"When the plaintiff in this case telegraphed to the defendant on March 19, 1915, as follows, 'Send contract and supplies, am ready for work,' was he referring to work under the contract of which he had a sample form as introduced in evidence, given to him by the defendant while he was at Burlington, Iowa?"

The contract referred to in plain terms abrogated the contract sued on. Griswold did not deny, and could not have done so, that if his telegram referred to this contract he had no case. The jury could not have failed to understand that, unless they answered the first question "No," Griswold could not recover.

Finding no reversible error of record, we affirm the judgment of the trial court.

Affirmed.