## FIDELITY INS. AGENCIES v. CITIZENS CASUALTY CO. OF NEW YORK.

### No. 10459.

United States Court of Appeals
Seventh Circuit.

Jan. 25, 1952.

Roderick N. Wyckoff, John B. King, Chicago, Ill., for appellant.

Floyd E. Thompson, and Johnston, Thompson, Raymond & Mayer, all of Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and KERNER and FINNEGAN, Circuit Judges.

FINNEGAN, Circuit Judge.

The appellant, Fidelity Insurance Agencies, plaintiff below, seeks to reverse a judgment in its favor for One Dollar ($1.00) entered on a directed verdict in the United States District Court for the Northern District of Illinois, Eastern Division.

The complaint on which the judgment is based charges that on May 18, 1944, the plaintiff, an Illinois Corporation, entered into a contract with the defendant-appellee, Citizens Casualty Company of New York, a New York Corporation licensed to engage in the insurance business in the State of Illinois; that under the terms of said contract plaintiff agreed to represent the defendant as its general agent in soliciting and procuring policies of insurance, and that the defendant agreed to pay to plaintiff a commission on the policies of insurance to be procured for it by plaintiff. The contract, it is alleged, was to be in force and effect for a period of five years, expiring on the thirty-first day of December, 1949. The plaintiff alleges that it entered upon performance of said contract; that as general agent it solicited and employed insurance brokers to procure insurance contracts for the defendant, and did procure such contracts, did collect the premiums on such insurance policies and did account for the same to the defendant after deducting commission earned and agreed to be paid under the terms of the contract. It is further charged that the plaintiff expended large sums of money in procuring brokers, and in advertising as general agent for the defendant. It is alleged that the defendant was guilty of breaches of the contract on three separate occasions. That on June 2, 1949, the defendant (in violation of the contract) ordered and directed that cancellation notices be sent to all brokers and policy holders on policies of liquor liability theretofore secured by the plaintiff, which policies by the terms thereof would expire on or after October 1, 1949. The second breach charged is, that on or about the tenth day of December, 1948, the defendant refused to allow the plaintiff to write and place with the defendant any further or new liquor liability policies. The third breach charged is that on April 12, 1949, the defendant failed and refused to carry out and perform the contract and breached the same by wrongfully refusing to allow plaintiff to solicit or procure insurance contracts for the defendant and by notifying plaintiff to cease operating under the contract. The plaintiff charged that it was damaged in the sum of $93,203.53 and prayed judgment therefor.

The answer of the defendant admits the execution of the contract of May 18, 1944, and attaches to and makes part thereof copies of said contract. The alleged breaches of the contract are denied to have been contrary to and in violation of the provisions of said contract.

An examination of the agreements between the parties discloses that the contract of May 18, 1944 was to terminate on December 31, 1946, but was extended on December 1, 1945, and made to expire on December 31, 1949. The territory in which plaintiff was to operate as general agent was the State of Illinois, except for the County of Cook.

To support the allegations of its complaint, plaintiff produced as its only witness John L. Walker, its president. It also examined as an adverse witness, Jack Hyman, president of the defendant company, and produced certain letters and agreements as exhibits.

The record discloses that the plaintiff, an Illinois corporation during the period here involved, had a capital of one thousand

dollars. It was organized in 1934. John L. Walker, his wife and his young daughter, were the incorporators. He furnished the entire capital, and with his wife and daughter formed its board of directors. They were the only stockholders and Mr. Walker was the president of the company. When first organized Fidelity occupied its own offices in the Insurance . Exchange Building of Chicago, engaging in the general insurance brokerage business. It had a general agency contract with New Century Insurance until December, 1941, at which time defendant-appellee, Citizens Casualty Company, took over New Century. They continued to operate under the old arrangement until the making of the contract, which is the basis of the present controversy.

That contract appointed plaintiff Fidelity, the state agent of defendant, Citizens, to procure applications for indemnity contracts covering liabilities arising in the fields of automobile, plate glass, workmen's compensation, liquor liability, and public liability. Fidelity agreed to devote its best efforts to further the interests of the defendant, Citizens, which on its part agreed to pay plaintiff specified commissions on the premiums received as consideration for such indemnity contracts. Fidelity, according to the agreement, was to collect and remit the premiums to Citizens. The defendant, Citizens, agreed to provide adequate claim service throughout the territory. The contract was to expire on December 31, 1949. It contained no cancellation clause. However, one section of the contract (section 8) provided: that the defendant, Citizens, should have the right to accept or reject any application for an insurance policy and to decline any risk in accordance with its underwriting practices.

John L. Walker, president of the Fidelity Insurance Agencies, personally guaranteed performance of the contract by plaintiff.

By a second distinct and separate contract dated December 3, 1945, John L. Walker, president of the plaintiff company, as an individual was employed by defendant, Citizens Casualty Company, as resident vice-president, with headquarters in Chicago. He agreed to devote his time and efforts to the management of the affairs of the defendant in its Western Division, and to discharge such duties as were assigned to him. His salary was fixed at $8000 a year, plus contingent commissions, and his employment was to terminate on December 31, 1949. Mr. Walker testified that prior to the making of the contract, he had a position with Citizens for about a year, also under a personal contract. He said that Fidelity in March, 1944, moved into the office of Citizens, which was apparently located on a different floor in the same building, and continued to occupy space therein, without payment of rent until December, 1949.

In June of 1948, plaintiff was ordered not to seek any further liquor liability policies in the 34 southern counties of Illinois, and also to cease soliciting or accepting such applications in the Springfield and Peoria areas of that State. Later Citizens, by telephone, confirmed by letter, notified Mr. Walker that it had decided to discontinue writing or renewing liquor liability insurance, and it directed the recall and cancellation of all liquor policies in force which would expire on or after October 1, 1949.

The record establishes that Citizens wrote no liquor liability in Illinois outside of Cook County from the time of such notices to plaintiff until the trial of this case.

Subsequently, after writing of liquor liability policies was discontinued, Citizens decided to stop taking any new business in the State of Illinois outside of Cook County, and on April 12, 1949, notified Mr. Walker to that effect. He in turn notified Fidelity that no further applications for insurance would be accepted.

Fidelity, however, continued in the insurance agency business. It announced to the public in June, and thereafter throughout 1949, that it then represented insurance companies in the casualty field and was making its facilities available to brokers. The lines of coverage were the same as those mentioned in the agreement with the defendant. Plaintiff produced no books of account or other substantial evidence showing the amount of business written during

any period, the amount of premiums collected, or commissions earned, or expenses of operating its agency. There was, as the trial judge pointed out to plaintiff's attorney, no evidence that would support a verdict for more than nominal damages.

The contracts involved in this case expired, according to their terms, on December 31, 1949. The agreement between Walker, personally, and the defendant Citizens was exactly and entirely performed.

After being notified, in April, 1949, that the defendant Citizens would accept no further applications for policies from Illinois outside of Cook County, the plaintiff, Fidelity, continued to occupy office space and use the facilities and equipment of Citizens' Chicago office until December, 1949. Up to that time, Fidelity collected premiums on outstanding policies which had been issued on applications procured through its efforts. No protest or complaint as to Citizens' actions in declining to consider further applications appears to have been made.

At the close of plaintiff's case, the defendant moved that the jury be instructed to return a verdict in its favor. This motion was denied. At the close of all the evidence, Citizens renewed its motion for a verdict in its favor. The court decided that, if defendant did not object, he would direct a verdict for the plaintiff assessing its damage at one dollar.

The defendant stated that it did not object and thereupon the court directed the jury to return a verdict for the plaintiff and assess it damages at one dollar. Judgment was immediately entered upon the directed verdict and this appeal followed. The grounds upon which reversal is sought, as stated by appellant, are:

1st—That the trial court erred in its ruling on the admission and rejection of evidence;

2nd—That the trial court erred in taking the case from the jury;

3rd—That the trial court erred in granting defendant's motion at the close of all the evidence; and

4th—That the trial court erred in directing the jury to assess plaintiff's damage at the sum of one dollar.

Fidelity in the brief filed on its behalf as appellant, had abandoned the first of the alleged reasons for reversal. It states: "Considering, however, that the trial judge directed a verdict, taking the case away from the jury, thereby making it impossible for the jury to have considered the evidence, we have decided to rely upon the other more important reasons for a reversal."

So far as the third reason for reversal is concerned, it is important to note that the defendant's motion, at the close of all the evidence was to direct the jury to find a verdict for the defendant. The trial court, as we have pointed out, did not grant this motion. On his own suggestion ·the trial judge did something quite different, he directed a verdict for the plaintiff, and further directed that its damages be assessed at one dollar. Appellant Fidelity is in no position to complain of that part of the court's direction which ordered a verdict in its favor. It was seeking in this lawsuit what the trial court ordered, a verdict in its favor. Of course, it was also seeking compensatory damages and the further direction of the trial court that only nominal damages, in the sum of one dollar, be assessed in its favor was a direction concerning which it might properly complain.

The appellee, Citizens, on the other hand, since it consented to the trial court's direction to the jury is bound thereby. In the brief filed on appellee's behalf, it is said: "It is defendant's position that there is no evidence of a breach of the agency contract between plaintiff and defendant, and that if it can be found on the evidence that there was a technical breach there is no competent evidence on which a judgment for damages could rest. However, defendant acquiesced in the court finding that issues for the plaintiff and assessing plaintiff's damages at $1.00, and it now defends the judgment entered on the directed verdict."

■ In our view the only issue presented on this appeal is: does the record contain competent evidence upon which a verdict for substantial damages might properly be based? In other words, did the trial court err in directing that the plaintiff's damages be assessed at the sum of one dollar?

The trial court stated that he relied on section 455 of the Restatement of the Law of Agency, which provides: "If the principal, in violation of the contract of employment, terminates or repudiates the employment, * * * the agent is entitled at his election to receive * * * the amount of the net losses caused and gains prevented by the principal's breach or, if there are no such losses or gains, a small sum as nominal damages; *. * *."

In the Restatement of the Law of Contracts, sections 328, 329 and 331 provide as follows:

328—"Where a right of action for breach exists, but no harm was caused by the breach, or the amount of harm caused thereby is not substantial or is not so established that compensatory damages will be given under the rule stated in section 329, judgment will be given for nominal damages, a small sum fixed without regard to the amount of harm."

329—"Where a right of action for breach exists, compensatory damages will be given for the net amount of the losses caused and gains prevented by the defendant's breach, in excess of savings made possible, if established in accordance with the rules stated in sections 330–346."

331(1)—"Damages are recoverable for losses caused or for profits and other gains prevented by the breach only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty."

■ In the case at bar, we can find no substantial evidence from which the probable profits prevented by the alleged breaches of the agency contract could be estimated in money terms with reasonable certainty. The record is clear that defendant, Citizens, ceased to do business in the 101 counties of Illinois outside of Cook County, when it notified Fidelity that it would no longer accept applications for policies of the character named in its contract. There is no competent evidence to establish that Fidelity even made any profits as a result of the contract with Citizens. It declared no corporate dividends and the record is absolutely silent as to the expense it was under in carrying on its business. It produced no books of record, or other competent evidence, to show what sums it had received as commission under the contract; there was no evidence as to expenses incurred in carrying out its business and how much, if any, profit it made therefrom.

Although plaintiff in its complaint stated its damages with great particularity as being in the sum of $93,203.53, there is nothing to be found in the record from which such amount could be estimated or derived.

In entering an order disposing of the present appeal, we feel constrained to repeat that neither appellant nor appellee, under the circumstances shown by this record, is in position to claim that error was committed by the trial judge in instructing the jury to sign a verdict in favor of the plaintiff.

■ In Pellet v. Manufacturers & Merchants Ins. Co., 104 F. 502, 508–510, this court held that the fact that an insurance company had appointed an agent to solicit business in a prescribed territory for a definite time, did not of itself amount to an agreement on the part of the company to continue to do business within the named territory, throughout the entire term of the contract. The contract appointing an agent must contain either an express or implied agreement to that effect. In the case at bar, there is no express promise or agreement that Citizens will continue for five years to accept insurance risks in Illinois, outside of Cook County. There is here no room for an implied agreement to that effect because the contract specifically provides that the defendant, Citizens, shall have the right to accept or refuse any application for a policy and any risk in accordance with its underwriting practice. Wolfe v. International Fire Ins. Co., 4 Cir., 207 F. 262, is to the same effect. Under the facts dis-

closed by the evidence in this case, we are convinced that the court should have directed a verdict for the defendant.

Under the circumstances, the judgement of the District Court is affirmed.